**ELLIS–DON CONSTRUCTION, INC., Plaintiff,**

v.

**HKS, INC.; Smith Seckman Reid, Inc.; and Corley Redfoot Zack, Inc., Defendants.**

**No. CIV.1:04 CV 00479.**

United States District Court, M.D. North Carolina.

Dec. 29, 2004.

Nigle Bruce Barrow, Jr., Raleigh, NC, Martin R. Salzman, William D. Flatt, Hendrick Phillips Salzman & Flatt, Atlanta, GA, for Plaintiff.

Andrew C. Buckner, John M. Nunnally, Ragsdale Liggett, PLLC, Arch T. Allen, III, Joseph C. Moore, III, Allen & Moore, L.L.P., Raleigh, NC, for Defendants.

## MEMORANDUM OPINION

BULLOCK, District Judge.

This diversity action, filed May 27, 2004, arises out of a hospital construction project in which Ellis–Don Construction, Inc. ("Plaintiff") served as the general contractor and HKS, Inc. ("HKS"), Smith Seckman Reid, Inc. ("SSR"), and Corley Redfoot Zack, Inc. ("CRZ") (together, "Defendants") served as the design team, responsible for overall project design and management. Plaintiff alleges that Defendants performed their duties negligently and in bad faith, causing Plaintiff to suffer economic damages. Plaintiff seeks actual and punitive damages against the Defendants jointly and severally, alleging statutory liability against HKS and tort liability against all three Defendants. Before the court is CRZ's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, CRZ's motion will be denied.

## FACTS

The University of North Carolina Hospitals, a state "public body" and owner of the construction project at issue here, contracted with HKS to design and manage the construction of the North Carolina Children's Hospital and North Carolina Women's Hospital. HKS contracted with SSR and CRZ to serve as consultants on the project, with SSR providing services relating to the mechanical, plumbing, electric, and fire protection systems, and CRZ providing architectural services, including planning and design work, administration of the construction process, and inspections. Plaintiff contracted directly with the owner to provide general contractor services for the construction of the hospitals. No contractual privity existed between Plaintiff and any of the Defendants.

CRZ, according to Plaintiff, was responsible for the preparation of the construction plans that the prime contractors, including Plaintiff, used to build the hospitals. CRZ was also responsible for coordinating the construction efforts of the various prime contractors, supervising their work, and administering the contracts under which each contractor operated. Plaintiff alleges that CRZ, and the other Defendants, performed these responsibilities negligently and in bad faith, resulting in construction delays and cost overruns that forced Plaintiff to incur economic losses in excess of $1,000,000. Plaintiff claims that each of the Defendants breached the duty of care recognized under North Carolina law despite the absence of contractual privity between the parties. CRZ argues that Plaintiff cannot, in the absence of privity, maintain a tort action solely for economic damages because such claims are precluded by North Carolina's economic loss rule.

## DISCUSSION

In considering a motion to dismiss, the court accepts as true all well-pleaded allegations and views the complaint in the light most favorable to the plaintiff. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Conclusions of law or unwarranted deductions of fact, however, are not admitted. See *Estate Constr. Co. v. Miller & Smith Holding Co., Inc.*, 14 F.3d 213, 218 (4th Cir.1994). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief." *Conley*, 355 U.S. at 45–46, 78 S.Ct. 99. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Revene v. Charles County Comm'rs*, 882 F.2d 870, 872 (4th Cir.1989).

Under the law of North Carolina, which controls in this diversity action, Plaintiff has asserted facts sufficient to withstand CRZ's motion to dismiss. In North Carolina, "in the absence of privity of contract an architect may be held liable to a general contractor and his subcontractors for economic loss resulting from breach of a common law duty of care." *Davidson & Jones, Inc., v. County of New Hanover*, 41 N.C.App. 661, 666, 255 S.E.2d 580 (1979). Such duty of care "flow[s] from the parties' working relationship." *Id.* at 667, 255 S.E.2d 580. Indeed, the courts of North Carolina have stated that the " 'power of economic life or death' " an architect holds over a contractor requires that such a duty of care be recognized, even in the absence of privity of contract. *Shoffner Indus., Inc. v. W.B. Lloyd Constr. Co.*, 42 N.C.App. 259, 266, 257 S.E.2d 50 (1979) (quoting *United States for the benefit of Los Angeles Testing Lab. v. Rogers & Rogers*, 161 F.Supp. 132, 136 (S.D.Cal.1958)). This duty of care has been recognized by this court in *RPR & Assocs. v. O'Brien/Atkins Assocs., P.A.*, 24

F.Supp.2d 515 (M.D.N.C.1998), and reaffirmed by the North Carolina Court of Appeals in *Pompano Masonry Corp., v. HDR Architecture, Inc.,* 598 S.E.2d 608 (2004). Plaintiff has alleged facts indicating that CRZ acted in the capacity of an architect, with considerable control over Plaintiff's operations as general contractor on the hospital construction project. The complaint, therefore, alleges facts that give rise to an action in tort against CRZ under North Carolina law.

■ CRZ argues that North Carolina's economic loss doctrine has expanded beyond its traditional realm of products liability and sales of goods to preclude Plaintiff's tort claim. The court disagrees. The economic loss doctrine, first articulated by the California Supreme Court in *Seely v. White Motor Co.,* 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965), and adopted by the United States Supreme Court in *East River S.S. Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986), was conceived of as a means by which to confine products liability in tort to damages for personal injury and injury to property other than the goods sold, and leave to contract law the question of liability for purely economic losses. This approach was, and remains, firmly rooted in traditional concepts of warranty and contract law, and operates to "keep products liability and contract law in separate spheres and to maintain a realistic limitation on damages" in products liability cases. *East River,* 476 U.S. at 871, 106 S.Ct. 2295. In North Carolina, the economic loss doctrine limits the types of damages that a purchaser of a product may recover against the seller or manufacturer of the product through a negligence action. The purchaser cannot use claims of negligence to recover 'purely economic losses' caused by the product's failure to meet expectations. Instead, the purchaser

must use contract law, including the Uniform Commercial Code (UCC).

*Higginbotham v. Dryvit Sys., Inc.,* 2003 WL 1528483, *3, 2003 U.S. Dist. LEXIS 4530, *8 (M.D.N.C.2003) (citing *Wilson v. Dryvit Sys., Inc.,* 206 F.Supp.2d 749, 753 (E.D.N.C.2002); *Moore v. Coachmen Indus., Inc.,* 129 N.C.App. 389, 401, 499 S.E.2d 772 (1998); and *Reece v. Homette Corp.,* 110 N.C.App. 462, 466–67, 429 S.E.2d 768 (1993)).

■ CRZ explores at length the "roots" and "flowering" of North Carolina's economic loss rule in support of its motion to dismiss, but it appears to be harvesting the wrong field in attempting to use the rule as a bar to Plaintiff's tort claim. The economic loss rule poses no obstacle to Plaintiff's claim. As noted, North Carolina's economic loss rule bars claims in tort for purely economic losses in the sale of goods covered by contract law, including the UCC. It does not limit tort actions that arise in the absence of a contract, nor is there any indication that the courts of North Carolina have expanded the rule beyond its traditional role in products liability cases. The privity requirement does, in some cases, preclude action in tort in the absence of a contractual relationship, but, as discussed above, North Carolina has expressly removed the privity requirement for tort actions by contractors against managing architects.

CRZ cites some broad statements of the economic loss rule that proclaim that "the economic loss doctrine prohibits recovery for economic loss in tort," *Land v. Tall House Bldg. Co.,* 602 S.E.2d 1, 4 (N.C.App. 2004), and depends on such broad characterizations of the rule to argue that the cause of action recognized in *Davidson* is no longer valid in North Carolina. Such statements are made, however, in cases deciding issues of products liability in which the transaction giving rise to the

dispute was governed by the law of contracts. Furthermore, all of the cases cited within such cases also address issues of products liability arising under contracts for the sale of goods. *See id.* (citing *Moore*, 129 N.C.App. at 401, 499 S.E.2d 772); *see also 2000 Watermark Ass'n, Inc. v. Celotex Corp.*, 784 F.2d 1183, 1185 (4th Cir.1986), and cases cited therein. Such a broad statement of the economic loss rule is entirely appropriate within the confines of those cases, as it is indisputably true that the rule operates to preclude recovery in tort for purely economic damages when a contract or the UCC operates to allocate the risk of such damages. That does not mean, however, that the doctrine has expanded to preclude all claims in tort for economic damages in the absence of a contract, or, more narrowly, outside the products liability context. The economic loss rule, even as stated in the cases cited by CRZ, in no way undermines or overturns the twenty-five years of case law recognizing the type of tort claim Plaintiff brings here. *Compare Davidson,* 41 N.C.App. 661, 255 S.E.2d 580 *with North Carolina State Ports Auth. v. Lloyd A. Fry Roofing Co.,* 294 N.C. 73, 240 S.E.2d 345 (1978); *Energy Investors Fund, L.P. v. Metric Constructors, Inc.,* 351 N.C. 331, 525 S.E.2d 441 (2000); *and Kaleel Builders, Inc. v. Ashby,* 161 N.C.App. 34, 587 S.E.2d 470 (2003).

## CONCLUSION

As in any diversity case, a federal court has the duty to apply state law. A state's highest court—here the North Carolina Supreme Court—is the best authority on its own law. In the absence of a definitive decision by the highest court, a federal court should apply what it finds to be state law after giving due regard to any relevant rulings of the state's intermediate court—here the North Carolina Court of Appeals. In the present case, state law has been consistent in recognizing the type of claim Plaintiff brings, and this court does not find the state supreme court's decision in *Energy Investors* and the state court of appeals' decision in *Tall House Bldg. Co.* to be to the contrary. Should there be some new pronouncement of state law, it is not too late at this stage of the proceedings to change in conformity with such decision.

Plaintiff has alleged facts sufficient to state a claim in tort under North Carolina law and the economic loss rule does not preclude such claims. Therefore, for the reasons set forth in this opinion, CRZ's motion to dismiss the complaint will be denied.

An order in accordance with this memorandum opinion shall be entered contemporaneously herewith.