JACK H. WINSLOW FARMS, INC., PLAINTIFF V. T. CARL DEDMON, ET ALS, DEFENDANTS

No. COA04-1679

(Filed 19 July 2005)

**Statutes of Limitation and Repose— farm silos—action for fraud two decades after sale—statute of repose**

Plaintiff's 1998 action for fraud in the sale of allegedly defective silos in 1976 and 1977 was controlled by N.C.G.S. § 1-50(a)(6), the six-year statute of repose that runs from purchase, rather than N.C.G.S. § 1-52(9), a statute of limitations that accrues upon discovery of the facts and within which plaintiff filed.

Appeal by plaintiff from order entered 28 July 2004 by Judge Dwight L. Cranford in Halifax County Superior Court. Heard in the Court of Appeals 15 June 2005.

*Hux, Livermon & Armstrong, L.L.P. by H. Lawrence Armstrong, Jr., and Blackburn & McCune, P.C. by Malcolm McCune, for plaintiff-appellant.*

*Pinto, Coates, Kyre & Brown, P.L.L.C. by David L. Brown and Bryan G. Scott, for defendant-appellees Dedmon and Dedmon's Harvestore Systems.*

*Leonard, Street, and Deinard, P.A. by Frederick W. Morris and Jeffrey A. Eyres, and Moore & Van Allen, P.L.L.C. by David E. Fox, for defendant-appellees A.O. Smith Corp.*

ELMORE, Judge.

Jack Winslow Farms, Inc. (plaintiff)[1] appeals from an order of summary judgment granted in favor of defendants, a retailer and manufacturer of grain silos. For the following reasons, we affirm the trial court's summary judgment order.

In 1976 plaintiff purchased a Harvestore silo to store high moisture corn to be used as feed for his hogs. Plaintiff, a North Carolina farmer, traveled to farms in Wisconsin and Indiana that were using the Harvestore silo before making his own purchase. He investigated the silos and all the promotional literature associated with them.

---

1. Although plaintiff is an incorporated business, for the purposes of this opinion we will use "plaintiff" to refer to Jack Winslow individually.

Finally, he contacted Carl Dedmon, a local Harvestore silo dealer, who eventually sold plaintiff his first silo.

Pleased with its performance, plaintiff bought two additional silos in 1977. Throughout the more than twenty years of using the silos, plaintiff never had reason to doubt the quality of his purchases. The size of his farm increased from 300 acres in 1960 to almost 2000 acres in 1999, and at that point involved about 1000 sows. Plaintiff always received market value for his hogs, and the high moisture corn stored in the silos consistently kept its yellow color, did not dry out, and did not spoil.

Then, in 1997, as plaintiff was filling his third silo, it collapsed and fell into the first silo, damaging it as well. Plaintiff attempted to get defendants to repair or replace the silos at defendants' cost, but each denied any agreement or warranty for that purpose. Plaintiff contacted a lawyer to represent him who was already involved in related litigation against defendant A.O. Smith. This lawyer suggested that plaintiff conduct a "test" on the feed being distributed to the hogs from the silos. Plaintiff alleges that the results from this test, which was conducted solely by plaintiff, supported a theory that there were problems with the silos throughout their more than twenty years of use.

In June 1998, plaintiff filed suit against defendants for multiple claims including breach of contract, breach of warranties, fraud, unfair and deceptive trade practices, and products liability. Plaintiff alleged that a design defect had allowed moisture or oxygen to reach the corn causing it to spoil or otherwise fail to be as nutritious for plaintiff's hogs. Plaintiff further alleged that the sole reason in purchasing the silos was because they were designed and marketed as having the ability to prevent spoilage of high moisture corn.

Defendants moved for summary judgment on all claims arguing, in part, that the statute of repose, economic loss doctrine, and plaintiff's failure to adequately show damages entitled them to relief. The trial court granted defendants' motion for summary judgment on 28 July 2004 and plaintiff appeals.

Summary judgment is properly granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2003).

> Summary judgment is appropriate for the defending party when (1) an essential element of the other party's claim or defense is non-existent; (2) the other party cannot produce evidence to support an essential element of its claim or defense; or (3) the other party cannot overcome an affirmative defense which would bar the claim.

*Caswell Realty Assoc. v. Andrews Co.*, 128 N.C. App. 716, 720, 496 S.E.2d 607, 610 (1998) (internal citation omitted).

> Whether a cause of action is barred by the statute of limitations is a mixed question of law and fact. . . . However, when the bar is properly pleaded and the facts are admitted or are not in conflict, the question of whether the action is barred becomes a question of law, and summary judgment is appropriate.

*McCarver v. Blythe*, 147 N.C. App. 496, 498, 555 S.E.2d 680, 682 (2001) (internal quotation omitted).

The question presented by this litigation is whether the statute of repose in N.C. Gen. Stat. § 1-50(a)(6) applies to plaintiff's fraud claim. Plaintiff argues that the statute of repose is inapplicable to claims for fraud,[2] which should instead be governed only by the three-year statute of limitations in N.C. Gen. Stat. § 1-52(9). Under that statute, a claim for fraud accrues only when the aggrieved party discovers the facts constituting the fraud. Plaintiff argues that despite twenty years of use, the discovery did not occur until January 1998 and, therefore, his complaint filed June 1998 is not time-barred. On the other hand, defendants argue that all of plaintiff's claims, including fraud, arise out of an alleged defect or failure in a product and are therefore controlled by section 1-50(a)(6), not section 1-52(9).

Section 1-50(a)(6) states that "[n]o action for the recovery of damages for personal injury, death or damage to property based upon or arising out of any alleged defect or any failure in relation to a product shall be brought more than six years after the date of initial purchase for use or consumption." N.C. Gen. Stat. § 1-50(a)(6) (2003). Section 1-50(a)(6), although included among statutes of limitations, is more aptly described as a statute of repose. *See Boudreau v. Baughman*, 322 N.C. 331, 339-40, 368 S.E.2d 849, 856-57 (1988) (construing N.C. Gen. Stat. § 1-50(6), now section 1-50(a)(6), and a Florida statute similar to it).

---

2. At oral argument, plaintiff conceded that the other claims brought against defendants were properly decided by the trial court.

Ordinary statutes of limitation are clearly procedural, affecting only the remedy directly and not the right to recover. . . . The statute of repose, on the other hand, acts as a condition precedent to the action itself. . . . Unlike a limitation provision which merely makes a claim unenforceable, a condition precedent establishes a time period in which suit must be brought in order for the cause of action to be recognized. If the action is not brought within the specified period, the plaintiff literally has *no* cause of action. The harm that has been done is *damnum absque injuria*—a wrong for which the law affords no redress.

*Id.* at 340-41, 368 S.E.2d at 857 (internal citations and quotations omitted). If section 1-50(a)(6) applies to plaintiff's action, then each claim is one "for which the law affords no redress"; plaintiff filed suit in 1998, more than fourteen years after the statute allows.

In *Colony Hill Condominium I Assoc. v. Colony Co.*, 70 N.C. App. 390, 396, 320 S.E.2d 273, 277 (1984), this Court applied what is now section 1-50(a)(6) to bar claims of breach of warranties, negligence, and failure to warn brought against a manufacturer. We stated that "[t]he generality of the language in Section 1-50(6) [now 1-50(a)(6)] indicates that the legislature intended to cover the multiplicity of claims that can arise out of a defective product." *Id.* While several other cases have strongly suggested that fraud arising from the marketing, selling, or advertising of products is also controlled by this statute, none have precisely held as such. *See Bernick v. Jurden*, 306 N.C. 435, 446-47, 293 S.E.2d 405, 412-13 (1982) (noting that the statute of repose in question was enacted to cover actions arising out of Chapter 99B, products liability, which include claims arising out of the marketing, selling, and advertising of a product); *Brown v. Lumbermens Mut. Casualty Co.*, 90 N.C. App. 464, 468-70, 369 S.E.2d 367, 369-71 (noting that fraudulent acts covering up a known defect would "arguably" be barred, but that fraudulent acts relating to providing counsel are hardly those that arise from the product and thus would not be barred by the statute), *disc. review denied*, 323 N.C. 363, 373 S.E.2d 541 (1988); *Davidson v. Volkswagenwerk, A.G.*, 78 N.C. App. 193, 194-95, 336 S.E.2d 714, 715-16 (holding that plaintiff's "tortious concealment" of a defect claim is barred by the plain language of the statute), *cert. denied*, 316 N.C. 375, 342 S.E.2d 892 (1986). In *Forsyth Memorial Hospital v. Armstrong World Industries*, 336 N.C. 438, 444, 444 S.E.2d 423, 427 (1994), our Supreme Court did not apply section 1-50(a)(6) to the case before it but instead applied section 1-50(5), now section 1-50(a)(5). Nonetheless, the

Court stated: "the difference in the two statutes of repose . . . [is that] [t]he real property improvement statute of repose expressly exempts all claims sounding in fraud or willful and wanton misconduct, whereas the products liability statute of repose contains no such exemption." *Id.*

Thus, despite having no case precisely on point, we find no ambiguity in the plain language of N.C. Gen. Stat. § 1-50(a)(6) and its application to claims of fraud arising from or in relation to an allegedly defective product. We too are persuaded by the stark contrast of section 1-50(a)(5), discussing the statute of repose for improvements to real property, and N.C. Gen. Stat. § 1-50(a)(6), dealing with all actions for damages to property "based upon or arising out of any alleged defect or any failure in relation to a product." The precision with which the General Assembly defined the scope of the real property statute of repose, *see* N.C. Gen. Stat. § 1-50(a)(5) (2003), is indicative of their intent to draft the products liability statute of repose broadly. Fraud is specifically noted as an exception to assertion of the statute in real property cases, N.C. Gen. Stat. § 1-50(a)(5)e. (2003), whereas there are no exceptions noted in regards to products liability.

Accordingly, plaintiff's action for fraud is controlled by N.C. Gen. Stat. § 1-50(a)(6). Plaintiff's claim for fraud arises from the alleged failure of a manufactured silo to perform as advertised or indicated by the silo's promotional literature. The silos were purchased in 1976 and 1977. Absent evidence of extended warranties, contracts, or otherwise upon which to base an action, plaintiff had six years from the date of purchase to bring claims against the manufacturer for defects or failures arising from the product. He did not do so, and his claims are now barred. Summary judgment in favor of defendants on this issue is dispositive.

Affirmed.

Judges CALABRIA and GEER concur.