WILLIAM A. LORD AND JENNIFER L. LORD, PLAINTIFFS v. CUSTOMIZED CONSULTING SPECIALTY, INC., 84 COMPONENTS COMPANY, 84 LUMBER COMPANY AND 84 LUMBER COMPANY, A LIMITED PARTNERSHIP, DEFENDANTS

No. COA06-725

(Filed 17 April 2007)

**1. Construction Claims— negligence in designing or manufacturing trusses—economic loss rule**

The trial court did not err by failing to bar plaintiffs' claims under the economic loss rule arising from the subcontractor defendants' alleged negligence in designing or manufacturing trusses used in constructing plaintiffs' home, because: (1) there was no contract between plaintiffs and the subcontractor defendants, and instead those defendants and the general contractor

defendant entered into a contract for the trusses; (2) there is a means of redress for those purchasers who suffer economic loss or damage from improper construction but who have no basis for recovery in contract; and (3) the subcontractor defendants had a duty to use reasonable care in performing its promise to provide reliable trusses to the general contractor for use in the construction of plaintiffs' residence.

**2. Construction Claims— negligence in designing or manufacturing trusses—statute of limitations**

The trial court did not err as a matter of law by denying the subcontractor defendants' motion for directed verdict based on the alleged expiration of the three-year statute of limitations under N.C.G.S. § 1-52 in an action arising from defendants' alleged negligence in designing or manufacturing trusses used in constructing plaintiffs' home, because: (1) the statute of limitations shall not accrue until bodily harm to the claimant or physical damages to his property becomes apparent or ought reasonably to have become apparent to the claimant, whichever event occurs first; and (2) whether a cause of action is barred by the statute of limitations is a mixed question of law and fact, and the weighing of the evidence and credibility of witnesses is the responsibility of the jury.

**3. Evidence— construction of another residence—statements made by employees**

The trial court did not abuse its discretion in an action arising from the subcontractor defendants' alleged negligence in designing or manufacturing trusses used in constructing plaintiffs' home by allowing evidence related to the construction of another residence with trusses from the subcontractor defendants and alleged statements made by defendants' employees, because: (1) the trial court heard extensive argument as to both issues and placed some limits on the evidence that could be presented; and (2) the decisions were based on reason.

**4. Negligence— instructions—economic loss rule on contributory negligence—duty to mitigate damages—intervening negligence**

The trial court did not abuse its discretion in an action arising from alleged negligence in designing or manufacturing trusses used in constructing plaintiffs' home by failing to submit the subcontractor defendants' requested instruction on allowable dam-

ages in a negligence action including the economic loss rule on contributory negligence, the duty to mitigate damages, and intervening negligence, because the bulk of defendants' argument again revisited the issue of the applicability of the economic loss rule, and that rule does not control in this case.

Appeal by defendants from judgment entered 18 November 2005 by Judge Kimberly S. Taylor in Superior Court, Iredell County. Heard in the Court of Appeals 23 January 2007.

*Wells Jenkins Lucas & Jenkins PLLC, by Ellis B. Drew, III, for plaintiffs-appellees.*

*Young, Morphis, Bach, & Taylor, L.L.P., by Thomas C. Morphis and Jimmy R. Summerlin, for defendants-appellants.*

WYNN, Judge.

The economic loss rule in North Carolina prohibits recovery for purely economic loss in tort, as such claims are instead governed by contract law.[1] Here, the subcontractor defendants argue that the economic loss rule prohibits the recovery of damages arising from their alleged negligence in designing or manufacturing trusses used in constructing the plaintiffs' home. Because the economic loss rule does not operate to bar a negligence claim in the absence of a contract between the parties, we affirm the trial court's judgment in favor of the plaintiffs.

On 4 December 1998, Customized Consulting Specialty, Inc. contracted with Plaintiffs William and Jennifer Lord to sell a lot and construct a home upon it. After constructing the home, the Lords closed upon the contract on 15 January 1999, paying Customized Consulting a purchase price of $122,000. Just under three years later, on 7 December 2001, the Lords brought an action against Customized Consulting, alleging various claims relating to purported defects in the construction of the residence.

In response, Customized Consulting named the 84 Components Company; 84 Lumber Company; and 84 Lumber Company, a Limited Partnership (collectively, the "84 Lumber Defendants") as third-party defendants in the case, as they had provided the trusses used in constructing the residence, as part of a subcontract with Customized

---

1. *Moore v. Coachmen Industries, Inc.*, 129 N.C. App. 389, 401, 499 S.E.2d 772, 780 (1998).

Consulting. The Lords claimed to have discovered the defects in the residence in February 2001, when Mr. Lord went underneath the house and saw that the trusses were sagging. Mr. Lord asserted that afterwards, the president of Customized Consulting confirmed in a conversation with him that the trusses were defective. He stated that a representative from 84 Lumber Defendants inspected the trusses, noting that some were "bad," and promising to correct the problem. However, according to the Lords, no further action was taken to repair the damage due to the trusses.

The Lords voluntarily dismissed their suit in January 2003 but refiled the action in May 2003, alleging causes of action against Customized Consulting for negligent construction and breach of implied warranty of workmanlike construction; against the 84 Lumber Defendants for negligence, breach of implied warranty of workmanlike construction, and breach of express warranty; and against all defendants for fraud and unfair and deceptive trade practices.

On 4 April 2005, the Lords took a voluntary dismissal of their claims against the 84 Lumber Defendants on the claims of breach of implied warranty of workmanlike construction and breach of express warranty. On 28 June 2005, the trial court granted summary judgment in favor of the 84 Lumber Defendants on the claims of fraud and unfair and deceptive trade practices; thus, only the claim of negligence remained against the 84 Lumber Defendants.

During the trial, at the close of the Lords' evidence and at the close of all evidence, the 84 Lumber Defendants moved for a directed verdict, arguing that the negligence claim was barred by the economic loss rule and the applicable three-year statute of limitations. The trial court denied both motions. The trial judge also refused the 84 Lumber Defendants' request for specific jury instructions as to damages, contributory negligence, mitigation of damages, and intervening and insulating negligence.

On 4 November 2005, the jury found verdicts in favor of Customized Consulting and thus, awarded no damages to the Lords from Customized Consulting. However, the jury returned a verdict against the 84 Lumber Defendants on the claim of negligent design or manufacture of the trusses provided for the Lords' home, and awarded damages in the amount of $42,000. The trial court later ordered that costs and prejudgment interest be taxed against the 84 Lumber Defendants.

LORD v. CUSTOMIZED CONSULTING SPECIALTY, INC.

[182 N.C. App. 635 (2007)]

From the trial court's judgment, the 84 Lumber Defendants now appeal, arguing that the trial court erred by (I) denying their motions for directed verdict, judgment notwithstanding the verdict, and new trial; (II) allowing the admission of evidence related to trusses in another residence and the testimony of alleged employees of 84 Lumber Defendants; (III) failing to submit requested jury instructions; (IV) taxing costs and prejudgment interest against them.

## I.

The 84 Lumber Defendants argue that the trial court should have barred the negligence claims under the (A) economic loss rule and (B) three-year statute of limitations. We disagree.

## (A)

[1] Simply stated, the economic loss rule prohibits recovery for purely economic loss in tort, as such claims are instead governed by contract law. *Moore v. Coachmen Industries, Inc.*, 129 N.C. App. 389, 401, 499 S.E.2d 772, 780 (1998). Economic losses include damages to the product itself. *Id.* A claimant may, however, recover in tort rather than contract for damages to property other than the product itself, if the losses are attributable to the defective product. *Reece v. Homette Corp.*, 110 N.C. App. 462, 467, 429 S.E.2d 768, 770 (1993).

As previously stated by this Court, "[t]he rationale for the economic loss rule is that the sale of goods is accomplished by contract and the parties are free to include, or exclude, provisions as to the parties' respective rights and remedies, should the product prove to be defective." *Moore*, 129 N.C. App. at 401-02, 499 S.E.2d at 780 (citing *Reece*, 110 N.C. App. at 466-67, 429 S.E.2d at 770). Thus, the rule encourages contracting parties to allocate risks for economic loss themselves, because the promisee has the best opportunity to bargain for coverage of that risk or of faulty workmanship by the promisor. For that reason,

> [A] tort action does not lie against a party to a contract who simply fails to properly perform the terms of the contract, even if that failure to perform was due to the negligent or intentional conduct of that party, when the injury resulting from the breach is damage to the subject matter of the contract. It is the law of contract and not the law of negligence which defines the obligations and remedies of the parties in such a situation.

*Spillman v. Am. Homes of Mocksville, Inc.*, 108 N.C. App. 63, 65, 422 S.E.2d 740, 741-42 (1992) (internal citations omitted); *see also Ports*

*Auth. v. Lloyd A. Fry Roofing Co.*, 294 N.C. 73, 83, 240 S.E.2d 345, 351 (1978), *rejected on other grounds, Trs. of Rowan Technical Coll. v. J. Hyatt Hammond Assocs., Inc.*, 313 N.C. 230, 328 S.E.2d 274 (1985).

Here, there was no contract between the Lords and the 84 Lumber Defendants; rather, the 84 Lumber Defendants and Customized Consulting entered into a contract for the trusses in question. Nevertheless, the 84 Lumber Defendants assert that the economic loss rule should apply to bar the Lords' negligence claim against them, based largely on the so-called "stucco cases."

In that line of cases, the plaintiffs were suing the manufacturer of a synthetic stucco system, seeking to recover for damages to their homes caused by water infiltration through and around the defendants' product. *See Wilson v. Dryvit Sys., Inc.*, 206 F. Supp. 2d 749 (E.D.N.C. 2002), *aff'd*, 71 Fed. Appx. 960 (4th Cir. 2003); *Higginbotham v. Dryvit Sys., Inc.*, No. 1:01CV0424, 2003 U.S. Dist. LEXIS 4530 (M.D.N.C. Mar. 20, 2003); *Land v. Tall House Bldg. Co.*, 165 N.C. App. 880, 602 S.E.2d 1 (2004). However, two of the cases on which the 84 Lumber Defendants rely are federal and thus not controlling on this Court. Additionally, the holding of the *Tall House* case related only to the questions of whether the contractor in question could bring a contribution or an indemnification claim against the stucco manufacturer. *Tall House*, 165 N.C. App. at 882-85, 602 S.E.2d at 3-4. The homeowner plaintiffs in that case sued the contractor directly, who in turn sued the stucco manufacturers. Because the issue concerned contribution or indemnification, the matter arose from the contractual relationship between the contractor and stucco manufacturer. Thus, the law of contract, not tort, controlled. Here, no such contract was present between the Lords and the 84 Lumber Defendants.

The origin and evolution of the economic loss rule in North Carolina arises from a line of cases starting with *Ports Authority v. Lloyd A. Fry Roofing Company*, in which our Supreme Court outlined the rationale for the rule and applied it to bar recovery for economic loss in tort when a contract existed between the two parties. 294 N.C. at 81-83, 240 S.E.2d at 350-51. More relevant to the instant case, our Supreme Court further refined the rule in *Oates v. JAG, Inc.*, 314 N.C. 276, 333 S.E.2d 222 (1985). In *Oates*, the plaintiff purchased a home originally built by the defendant contractor for the seller. After moving into the house, the plaintiff discovered numerous construction defects, leading to expensive repairs and renovations. He sued the defendant for negligent construction. After the trial court

granted the defendant's motion to dismiss based on the grounds that no contractual relationship existed between the parties, our Supreme Court reversed and allowed the plaintiff's complaint to proceed in tort, even though his losses were purely economic. *Id.* at 279-81, 333 S.E.2d at 225-26. The Court stated that

> The duty owed by a defendant to a plaintiff may have sprung from a contractual promise made to another; however, the duty sued on in a negligence action is not the contractual promise but the duty to use reasonable care in affirmatively performing that promise. The duty exists independent of the contract. Existence of a contract may incontrovertibly establish that the parties owed a duty to each other to use reasonable care in the performance of the contract, but it is not an exclusive test to the existence of that duty. Whether a defendant's duty to use reasonable care extends to a plaintiff not a party to the contract is determined by whether that plaintiff and defendant are in a relationship in which the defendant has a duty imposed by law to avoid harm to the plaintiff.

*Id.* at 279, 333 S.E.2d at 225 (quoting *Navajo Circle, Inc. v. Dev. Concepts Corp.*, 373 So.2d 689, 691 (Fla. Dist. Ct. App. 1979).

We also note that this Court later distinguished *Oates*, in affirming the dismissal of a negligence claim brought by homeowner plaintiffs against their contractor for the use of beetle-infested interior beams in the construction of their house:

> In *Oates*, the Court did recognize, . . . that such a cause of action exists in favor of an owner *who is not the original purchaser*. However, nothing in that decision suggests an intent to overrule the Court's earlier holding in *Ports Authority* with respect to claims by the initial purchaser. We therefore presume that the Court intended to leave that holding intact, and to merely recognize a means of redress for those purchasers who suffer economic loss or damage from improper construction but who, because not in privity with the builder, have no basis for recovery in contract or warranty.

*Warfield v. Hicks*, 91 N.C. App. 1, 10, 370 S.E.2d 689, 694 (emphasis in original), *disc. rev. denied*, 323 N.C. 629, 374 S.E.2d 602 (1988). Our conclusion as to the applicability of *Oates* to the instant case is consistent with that language in *Warfield*. Here, too, we "merely recog-

nize a means of redress for those purchasers who suffer economic loss or damage from improper construction but who, . . . have no basis for recovery in contract[.]"

Moreover, though not controlling, we are persuaded by a federal court's holding that North Carolina's economic loss rule "does not limit tort actions that arise in the absence of a contract," but "[t]he privity requirement does, in some cases, preclude action in tort in the absence of a contractual relationship." *Ellis-Don Constr., Inc. v. HKS, Inc.*, 353 F. Supp. 2d 603, 606 (M.D.N.C. 2004). *Ellis-Don* repudiated the idea that the economic loss doctrine prohibits recovery for any and all economic loss in tort; rather, the court reasoned that the doctrine has *not* "expanded to preclude all claims in tort for economic damages in the absence of a contract, or, more narrowly, outside the products liability context." *Id.* The court further reasoned that "[t]he economic loss rule . . . in no way undermines or overturns the twenty-five years of case law recognizing [a tort claim for negligence from the breach of the duty of care]." *Id.* We agree with the reasoning in *Ellis-Don* and its holding that "[North Carolina] state law has been consistent in recognizing [this] type of claim . . ., and this court does not find . . . the state court of appeals' decision in *Tall House Bldg. Co.* to be to the contrary." *Id.*

The 84 Lumber Defendants also argue that this case should be controlled by *Moore v. Coachmen Industries, Inc.*, in which this Court held that a plaintiff was barred by the economic loss rule from recovering from the manufacturer of a defective electrical converter that caused the destruction of his recreational vehicle. 129 N.C. App. at 401-02, 499 S.E.2d at 780. However, our Legislature has specifically acted to limit liability for purely economic loss in the case of products such as the recreational vehicle in *Moore*. *See* North Carolina Products Liability Act, N.C. Gen. Stat. § 99B-2(b) (2005) (eliminating the privity requirement for an action against manufacturers, but only for breach of warranty actions seeking recovery for personal injury or property damage); *Atl. Coast Mech., Inc. v. Arcadis, Geraghty & Miller of North Carolina, Inc.*, 175 N.C. App. 339, 345-46, 623 S.E.2d 334, 339 (2006) (privity still required for an action that seeks recovery for economic loss, since such an action would not be governed by the Act).

The Legislature has taken no such action in the construction of homes, and we find compelling in that context our Supreme Court's adoption of the following language:

The ordinary purchaser of a home is not qualified to determine when or where a defect exists. Yet, the purchaser makes the biggest and most important investment in his or her life and, more times than not, on a limited budget. The purchaser can ill afford to suddenly find a latent defect in his or her home that completely destroys the family's budget and have no remedy for recourse. This happens too often. The careless work of contractors, who in the past have been insulated from liability, must cease or they must accept financial responsibility for their negligence. In our judgment, building contractors should be held to the general standard of reasonable care for the protection of anyone who may foreseeably be endangered by their negligence.

*Oates*, 314 N.C. at 280-81, 333 S.E.2d at 225-26 (quoting *Navajo Circle, Inc. v. Dev. Concepts Corp.*, 373 So.2d 689, 691 (Fla. Dist. Ct. App. 1979).

We hold that the 84 Lumber Defendants had a duty to use reasonable care in performing its promise to provide reliable trusses to Customized Consulting for use in the construction of the Lords' residence. Because there was no contract between the Lords and the 84 Lumber Defendants, we further find that the economic loss rule does not apply and therefore does not operate to bar the Lords' negligence claims.

(B)

[2] In North Carolina, the applicable statute of limitations for claims involving negligence for personal injury or physical damage to a claimant's property is three years, which "shall not accrue until bodily harm to the claimant or physical damage to his property becomes apparent or ought reasonably to have become apparent to the claimant, whichever event first occurs." N.C. Gen. Stat. § 1-52 (2005). Moreover, it is well established that "[w]hether a cause of action is barred by the statute of limitations is a mixed question of law and fact." *Jack H. Winslow Farms, Inc. v. Dedmon*, 171 N.C. App. 754, 756, 615 S.E.2d 41, 43 (2005) (quoting *McCarver v. Blythe*, 147 N.C. App. 496, 498, 555 S.E.2d 680, 682 (2001)). The issue becomes a question of law if "the facts are admitted or are not in conflict," at which point summary judgment or other trial judge rulings are appropriate. *Id.* However, "[w]hen the evidence is sufficient to support an inference that the limitations period has not expired, the issue should be submitted to the jury." *Everts v. Parkinson*, 147 N.C. App. 315, 319,

555 S.E.2d 667, 670 (2001) (quoting *Little v. Rose*, 285 N.C. 724, 727, 208 S.E.2d 666, 668 (1974)).

Here, the Lords filed their original lawsuit in December 2001, then dismissed and refiled in February 2003. Mr. Lord testified at trial that he and his wife realized there was a problem with the trusses at their residence in February 2001. Nevertheless, the 84 Lumber Defendants point to earlier statements by the Lords, in both their complaint and their responses to interrogatories, that they had in fact noticed the problems in 1999, soon after they had moved into the residence. That date of discovery would indeed place the February 2003 filing as past the applicable statute of limitations. However, the jury found in a special interrogatory that the "defect in the design or manufacture of the trusses [became] apparent or should reasonably have become apparent to the [Lords]" in February 2001.

Essentially, the 84 Lumber Defendants ask this Court to choose one version of the facts over another. We decline to do so, as such weighing of the evidence and credibility of witnesses is the responsibility of the jury, not an appellate court. The date of the discovery of the physical damage to the Lords' residence was a question of fact. As such, we conclude that the issue of whether the negligence claims were barred by the statute of limitations was a mixed question of law and fact. Therefore, the trial court properly denied the 84 Lumber Defendants' motion for directed verdict on these grounds.

In sum, we conclude that the trial court did not err as a matter of law by denying the 84 Lumber Defendants' motion for directed verdict. Additionally, the same reasoning applies to the 84 Lumber Defendants' assignments of error as to denial of their motions for judgment notwithstanding the verdict and for a new trial; those, too, are therefore rejected.

II.

[3] The 84 Lumber Defendants next argue that the trial court committed prejudicial error in allowing evidence related to the construction of another residence with trusses from the 84 Lumber Defendants and alleged statements made by 84 Lumber Defendants employees. We disagree.

A trial court's evidentiary rulings are subject to appellate review for an abuse of discretion, and will be reversed only upon a finding that the ruling was so arbitrary that it could not be the result of a rea-

LORD v. CUSTOMIZED CONSULTING SPECIALTY, INC.

[182 N.C. App. 635 (2007)]

soned decision. *Gibbs v. Mayo*, 162 N.C. App. 549, 561, 591 S.E.2d 905, 913 (2004) (internal quotations and citations omitted). After a careful review of the record and transcripts before us, we note that the trial court heard extensive argument as to both issues and placed some limits on the evidence that could be presented; the decisions were clearly based on reason, and we conclude that there was no abuse of discretion. Accordingly, this assignment of error is rejected.

## III.

[4] The 84 Lumber Defendants next argue that the trial court committed prejudicial error in its instructions to the jury, including failing to submit their requested instruction on allowable damages in a negligence action, specifically the economic loss rule, on contributory negligence, on the duty to mitigate damages, and on intervening negligence. We disagree.

On appeal to this Court, "[j]ury instructions must be considered and reviewed in their entirety; the instructions will not be dissected and examined in fragments." *Robinson v. Seaboard System R.R., Inc.*, 87 N.C. App. 512, 524, 361 S.E.2d 909, 917 (1987) (citing *Gregory v. Lynch*, 271 N.C. 198, 155 S.E.2d 488 (1967)), *disc. rev. denied*, 321 N.C. 474, 364 S.E.2d 924 (1988). However, "it is not enough for the appealing party to show that error occurred in the jury instructions; rather, it must be demonstrated that such error was likely, in light of the entire charge, to mislead the jury." *Id.* (citations omitted). Moreover, our Supreme Court has held that "the trial court has wide discretion in presenting the issues to the jury and no abuse of discretion will be found where the issues are sufficiently comprehensive to resolve all factual controversies and to enable the court to render judgment fully determining the cause." *Murrow v. Daniels*, 321 N.C. 494, 499-500, 364 S.E.2d 392, 396 (1988) (internal quotation and citation omitted).

After a careful review of the jury instructions proposed by the 84 Lumber Defendants and the transcript before us, we find no such abuse of discretion by the trial judge. The bulk of the argument presented by 84 Lumber Defendants again revisited the issue of the applicability of the economic loss rule; as we agree with the trial court that the rule does not control in this case, we find his decision not to submit the proposed instructions to be based on reason. This assignment of error is rejected.

IV.

Lastly, the 84 Lumber Defendants contend that the trial court erred in granting the Lords' motion to tax costs and award of pre-judgment interest. We disagree.

Again, we review the award of costs to a prevailing party for an abuse of discretion. N.C. Gen. Stat. § 6-20 (2005); *Cosentino v. Weeks*, 160 N.C. App. 511, 516, 586 S.E.2d 787, 789 (2003). We find no such abuse of discretion and therefore dismiss this assignment of error.

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

Judges HUNTER and STEELMAN concur.