Gallaher v. Ciszek, 2020 NCBC 76.

STATE OF NORTH CAROLINA

CUMBERLAND COUNTY

KEITH JAMES GALLAHER; HUGH
SCOTT CAMERON, II; and KRISTEN
B. COGGIN,

          Plaintiffs,

    v.

THOMAS ARTHUR CISZEK and
CAPE FEAR NEONATOLOGY
SERVICES, P.A., a North Carolina
Professional Association,

          Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
19 CVS 5780

**ORDER AND OPINION ON
PLAINTIFFS' MOTION TO DISMISS
DEFENDANTS' COUNTERCLAIM
FOR WRONGFUL INTERFERENCE
[CORRECTED]**

1.    **THIS MATTER** is before the Court upon Plaintiffs Keith James Gallaher ("Dr. Gallaher"), Hugh Scott Cameron, II ("Dr. Cameron"), and Kristen B. Coggin's ("Dr. Coggin") Motion to Dismiss Defendants Thomas Arthur Ciszek ("Dr. Ciszek") and Cape Fear Neonatology Services, P.A.'s ("Cape Fear Neo") third counterclaim for wrongful interference with existing and prospective business relations filed February 28, 2020 in the above-captioned case (the "Motion"). (ECF No. 31.)

2.    Having considered the Motion, the materials submitted in support of and in opposition to the Motion, the arguments of counsel at the hearing on the Motion, and other appropriate matters of record, the Court hereby **GRANTS** the Motion for the reasons set forth below and **DISMISSES** Defendants' third counterclaim without prejudice.

> *The Law Offices of Lonnie M. Player, Jr., PLLC, by Lonnie M. Player, Jr., and Player McLean, LLP, by James A. McLean, for Plaintiffs Keith James Gallaher, Hugh Scott Cameron, II, and Kristen B. Coggin.*

*Hutchens, Senter, Kellam & Pettit, P.A., by H. Terry Hutchens, J. Haydon Ellis, and J. Scott Flowers, for Defendants Thomas Arthur Ciszek and Cape Fear Neonatology Services, P.A., a North Carolina Professional Association.*

Bledsoe, Chief Judge.

I.

FACTUAL AND PROCEDURAL BACKGROUND

3.    The Court does not make findings of fact on motions to dismiss under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)"). *See, e.g.*, *Concrete Serv. Corp. v. Invs. Grp., Inc.*, 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986). Rather, the Court recites only those facts alleged in Defendants' counterclaims that are relevant to the Court's determination of the Motion.

4.    This matter involves claims and counterclaims arising out of Plaintiffs' resignations from employment with Cape Fear Neo and their alleged entry into a contract with the Cumberland County Hospital System, Inc. (the "Hospital") to provide neonatology services. Of specific interest on this Motion are Defendants' counterclaims for breach of contract—based on Plaintiffs' alleged breach of non-competition agreements with Cape Fear Neo—and for wrongful interference with Cape Fear Neo's existing and prospective business relationships—in particular, with the Hospital. Plaintiffs bring the Motion seeking to dismiss this latter counterclaim (the "Counterclaim"), contending that the counterclaim should be dismissed both by operation of the economic loss rule and for Defendants' failure to plead that Plaintiffs

induced a third party to either breach a contract with Cape Fear Neo or refrain from contracting with Cape Fear Neo.

5. The relevant background to this dispute is straightforward. Cape Fear Neo has provided neonatology services to the Hospital since 1985, most recently pursuant to an independent contractor agreement executed in 2000 (the "Hospital Agreement"). (Mot. Dismiss, Answer Compl. & Countercls. ¶ 9 [hereinafter "Countercls."], ECF No. 4.) Payments made pursuant to the Hospital Agreement are Cape Fear Neo's "only source of revenue[.]" (Countercls. ¶ 9.)

6. Cape Fear Neo entered into separate employment contracts with Dr. Gallaher on February 1, 1990, Dr. Cameron on February 23, 2005, and Dr. Coggin on August 1, 2012 (collectively, the "Employment Contracts"). (Countercls. ¶¶ 6–8, Exs. A–C.) Defendants allege that "[t]he terms of the Hospital Agreement were expressly made a part of Plaintiffs' Employment Contracts." (Countercls. ¶ 11.) The non-competition provision of each Employment Contract provides that Plaintiffs "will not engage in the practice of neonatology, nor be an officer, director, shareholder or employee of a corporation, nor an owner, investor or employee of any other business in competition with the business of [Cape Fear Neo in the identified territory]." (Countercls. ¶ 12, Ex. A ¶ 23, Ex. B ¶ 26, Ex. C ¶ 26.)

7. According to Defendants, "[i]n or around December 2018, Defendants [Cape Fear Neo and its sole shareholder, Dr. Ciszek] began negotiating a new contract with the Hospital for the provision of neonatal services at the Hospital." (Countercls. ¶ 10.) Shortly thereafter, on or about January 25, 2019, Plaintiffs tendered their

resignations to Cape Fear Neo, effective April 30, 2019. (Countercls. ¶ 15.) Defendants allege that while Plaintiffs were employed by Cape Fear Neo, they negotiated with the Hospital in violation of their Employment Contracts and entered into an agreement with the Hospital to provide neonatology services. (Countercls. ¶¶ 18–19.) Defendants assert that Plaintiffs are currently providing neonatology services at the Hospital in violation of the non-competition provisions in the Employment Contracts. (Countercls. ¶ 20.)

8. The Motion has been fully briefed, and the Court held a hearing on the Motion by videoconference on July 16, 2020 (the "Hearing"), at which all parties were represented by counsel. The Motion is now ripe for resolution.

II.

LEGAL STANDARD

9. "An inquiry into the sufficiency of a counterclaim to withstand a motion to dismiss under Rule 12(b)(6) is identical to that regarding the sufficiency of a complaint to survive the same motion." *Chesapeake Microfilm, Inc. v. E. Microfilm Sales & Serv., Inc.*, 91 N.C. App. 539, 542, 372 S.E.2d 901, 902 (1988); *see also, e.g.*, *Washburn v. Yadkin Valley Bank & Tr. Co.*, 190 N.C. App. 315, 325, 660 S.E.2d 577, 585 (2008) (noting that a counterclaim is subject to "[t]he same rules regarding the sufficiency of a complaint to withstand a motion to dismiss"); *Recurrent Energy Dev. Holdings, LLC v. SunEnergy1, LLC*, 2017 NCBC LEXIS 18, at *20–21 (N.C. Super. Ct. Mar. 7, 2017) (applying Rule 12(b)(6) legal standard to counterclaim).

10. The Court must therefore determine "whether, as a matter of law, the allegations of the [counterclaim], treated as true, are sufficient to state a claim upon which relief can be granted under some recognized legal theory." *Isenhour v. Hutto*, 350 N.C. 601, 604, 517 S.E.2d 121, 124 (1999) (citation and brackets omitted). The counterclaim must be "liberally construed," and dismissal is not proper "unless it appears beyond doubt that the [defendant] could prove no set of facts in support of his claim which would entitle him to relief." *Turner v. Hammocks Beach Corp.*, 363 N.C. 555, 559, 681 S.E.2d 770, 774 (2009) (citation omitted).

11. Dismissal under Rule 12(b)(6) is appropriate "(1) when the [counterclaim] on its face reveals that no law supports [defendant's] claim; (2) when the [counterclaim] reveals on its face the absence of fact[s] sufficient to make a [ ] claim; [or] (3) when some fact disclosed in the [counterclaim] necessarily defeats the [defendant's] claim." *Intersal, Inc. v. Hamilton*, 373 N.C. 89, 98, 834 S.E.2d 404, 411 (2019) (quoting *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985)).

12. Where, as here, one or both sides rely on documents which are the subject of the counterclaim and to which the counterclaim specifically refers, the Court may consider those documents without converting the motion under Rule 12(b)(6) into a motion for summary judgment. *See Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60, 554 S.E.2d 840, 847 (2001) (recognizing this principle even when documents are presented by the movant); *see also Schlieper v. Johnson*, 195 N.C. App. 257, 261, 672 S.E.2d 548, 551 (2009) ("When documents are attached to and incorporated into a complaint, they become part of the complaint and may be considered in connection

with a Rule 12(b)(6) motion without converting it into a motion for summary judgment."). The Court, however, need not accept as true allegations in the counterclaim "that are contradicted by the documents attached, specifically referred to, or incorporated by reference in the [counterclaim]." *Laster v. Francis*, 199 N.C. App. 572, 577, 681 S.E.2d 858, 862 (2009).

III.

ANALYSIS

13. The Counterclaim that Plaintiffs seek to dismiss on this Motion states, in relevant part, as follows:

> 43. Plaintiffs' actions as set forth in herein above, including, without limitation, their breach of contract, misappropriation of Cape Fear Neo's trade secrets and confidential information, and their unfair methods of competition constitute wrongful interference with Cape Fear Neo's business relationships and with revenues that Cape Fear Neo had negotiated and expected related to its relationship and agreements with the Hospital.

> 44. Plaintiffs interfered with Cape Fear Neo's existing and prospective business relations by unlawfully and unjustly using and taking advantage of Cape Fear Neo's Trade Secrets and confidential information and violating the express terms of the Employment Contracts.

(Countercls. ¶¶ 43–44.) Although phrased as a single counterclaim for "wrongful interference," it is clear that Defendants are advancing two counterclaims—one for tortious interference with contract and another for tortious interference with prospective economic advantage.[1]

---

[1] Nevertheless, to avoid confusion, the Court references the Counterclaim herein as a single counterclaim for wrongful interference, the nomenclature chosen by Defendants.

14.  To state a counterclaim for tortious interference with contract, a defendant must allege:

(1) a valid contract between the [defendant] and a third person which confers upon the [defendant] a contractual right against a third person; (2) the [plaintiff] knows of the contract; (3) the [plaintiff] *intentionally induces* the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to [defendant].

*United Labs., Inc. v. Kuykendall*, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988) (emphasis added).

15.  To state a counterclaim for tortious interference with prospective economic advantage, a defendant "must allege facts to show that the [plaintiff] acted without justification in *inducing* a third party to refrain from entering into a contract with [the defendant] which contract would have ensued but for the interference." *Window Gang Ventures, Corp. v. Salinas*, 2019 NCBC LEXIS 24, at *34 (N.C. Super. Ct. Apr. 2, 2019) (emphasis added) (internal quotation marks omitted) (quoting *Walker v. Sloan*, 137 N.C. App. 387, 393, 529 S.E.2d 236, 242 (2000)). "[I]t is sufficient for a party to state a claim for interference with 'relations' or 'business relations' when referring to interference with existing contracts or the prospective likelihood of future contracts." *Artistic S. Inc. v. Lund*, 2015 NCBC LEXIS 113, at *27 (N.C. Super. Ct. Dec. 9, 2015) (quoting *Sunbelt Rentals, Inc. v. Head & Engquist Equip., L.L.C.*, 2002 NCBC LEXIS 2, at *29 (N.C. Super. Ct. July 10, 2002)).

16.  As noted, Plaintiffs advance two grounds for dismissal of the Counterclaim. First, Plaintiffs argue that the Counterclaim is barred by the economic loss rule. (Mem. Law Supp. Pls.' Mot. Dismiss 3 [hereinafter "Pls.' Supp. Br."], ECF No. 32.) Second, in an argument advanced for the very first time at the Hearing but without

objection by Defendants, Plaintiffs contend that the Counterclaim must be dismissed for failure to allege that Plaintiffs induced the Hospital not to perform its contract with Cape Fear Neo and to refrain from further contracting with Cape Fear Neo. The Court addresses each contention in turn.

A.    Economic Loss Rule

17.    In North Carolina, the economic loss rule "prohibits recovery for purely economic loss in tort, as such claims are instead governed by contract law." *Lord v. Customized Consulting Specialty, Inc.*, 182 N.C. App. 635, 639, 643 S.E.2d 28, 30 (2007) (citing *Moore v. Coachmen Indus., Inc.*, 129 N.C. App. 389, 401, 499 S.E.2d 772, 780 (1998)). The rule's rationale posits that while "[t]he average plaintiff in a tort lawsuit does not choose his or her tortfeasors[,] [c]ontracting parties, by comparison, have the ability to allocate risk among themselves at the outset of a transaction and are encouraged to do so." *Crescent Univ. City Venture, LLC v. AP Atl., Inc.*, 2019 NCBC LEXIS 46, at *76 (N.C. Super. Ct. Aug. 8, 2019) (citing *Lord*, 182 N.C. App. at 639, 643 S.E.2d at 30).

18.    The result is that "[t]he tort claim 'must be grounded on a violation of a *duty* imposed by operation of law, and the right invaded must be one that the law provides without regard to the contractual relationship of the parties.' " *Window Gang Ventures*, 2019 NCBC LEXIS 24, at *24 (quoting *Rountree v. Chowan Cty.*, 252 N.C. App. 155, 160, 796 S.E.2d 827, 831 (2017)). In short, "a plaintiff must allege a duty owed to him by the defendant [that is] separate and distinct from any duty owed

under a contract." *Artistic S.*, 2015 NCBC LEXIS 113, at \*24 (quoting *Akzo Nobel Coatings, Inc. v. Rogers*, 2011 NCBC LEXIS 42, at \*48 (N.C. Super. Ct. Nov. 3, 2011)).

19. Plaintiffs contend that the Counterclaim is indistinct from Defendants' counterclaim for breach of contract and is thus barred by the economic loss rule. Plaintiffs argue that because the Hospital Agreement was fully incorporated into the Employment Contracts, the Counterclaim—which is based on Plaintiffs' alleged interference with the Hospital Agreement—essentially seeks recovery for Plaintiffs' alleged interference with their own Employment Contracts—which is the subject of Defendants' breach of contract counterclaim. Contending that a wrongful interference claim cannot be based on a party's inducement of a breach of the party's own contract, Plaintiffs argue that Defendants' tort and breach of contract counterclaims are fundamentally the same and that dismissal of the tort counterclaim under the economic loss rule is appropriate. (July 16, 2020 Hr'g Tr. 11:22–12:5, 12:17–23, 23:11–23 [hereinafter "Tr."], ECF No. 44; Pls.' Supp. Br. 4–5.)

20. Defendants' vigorously dispute Plaintiffs' contention on both legal and factual grounds. They argue that the breach of contract and wrongful interference counterclaims are identifiable and distinct because the breach of contract counterclaim is based on Plaintiffs' alleged breach of the Employment Contracts' non-competition provisions and the wrongful interference counterclaim is based on Plaintiffs' alleged interference with Cape Fear Neo's existing and prospective contractual relationship with the Hospital. As such, Defendants contend that the duty forming the basis of their wrongful interference counterclaim—namely, that

Plaintiffs have a legal duty arising from law to refrain from interfering with Cape Fear Neo's contract with the Hospital—is separate and distinct from Plaintiffs' contractual duties not to compete with Cape Fear Neo. (Defs.' Responsive Br. Opp'n Pls.' Mot. Dismiss 3–5, ECF No. 37.)

21. Defendants also point out that, contrary to Plaintiffs' core premise, the Employment Contracts expressly provide that they incorporate only "certain terms and conditions" of the Hospital Agreement, not the Hospital Agreement in its entirety. (Tr. 18:10–18, 22:13–23:1; Countercls. Ex. A ¶¶ 3, 17, 25 (incorporating "certain terms and conditions" of the 1985 agreement between the Hospital and Dr. Ciszek attached at ECF No. 41), Ex. B ¶¶ 3, 20, 28 (incorporating "certain terms and conditions" of the 2000 Independent Contractor Agreement between the Hospital and Cape Fear Neo), Ex. C ¶¶ 3, 20, 28 (same).) As such, Defendants argue that Plaintiffs' "single contract" theory necessarily fails.

22. The Court concludes that Defendants have the better of this dispute, although for somewhat different reasons. While the Court agrees with Defendants that the Employment Contracts only partially incorporate the Hospital Agreement, the Court does not find the resolution of this dispute dispositive on Plaintiffs' Motion.

23. Rather, the question posed by the economic loss rule is whether Defendants' Counterclaim is premised on the same legal duty as Defendants' breach of contract counterclaim. *See, e.g.*, *Akzo Nobel*, 2011 NCBC LEXIS 42, at *48. Here, the answer is no.

24. Defendants' breach of contract counterclaim is based on Plaintiffs' alleged breach of their contractual duty to "not engage in the practice of neonatology, nor be an officer, director, shareholder or employee of a corporation, nor an owner, investor or employee of any other business in competition with the business of [Cape Fear Neo in the identified territory]." (Countercls. ¶ 12, Ex. A ¶ 23, Ex. B ¶ 26, Ex. C ¶ 26.) By the Employment Contracts' plain terms, therefore, the duty not to compete that underlies Defendants' breach of contract counterclaim is limited to Plaintiffs' performance of neonatology services and Plaintiffs' participation in a business in competition with Cape Fear Neo.

25. In contrast, Defendants' wrongful interference counterclaim is based on Plaintiffs' alleged breach of their duty not to interfere with Cape Fear Neo's existing and prospective business relationships—in particular, its relationship with the Hospital. Rather than arise from a duty under contract, this latter counterclaim "arises from a common law duty of a third party not to interfere with another's right to freedom of contract or to enjoy the benefits thereof." *Smith Jamison Constr. v. Apac-Atl., Inc.*, 257 N.C. App. 714, 719, 811 S.E.2d 635, 639 (2018).

26. As pleaded here, the duties underlying Defendants' contract and tort counterclaims are not the same. Significantly, Defendants have not alleged that Cape Fear Neo's existing and prospective contracts with the Hospital required that Cape Fear Neo serve as the Hospital's sole and exclusive supplier of neonatal services. As a result, Plaintiffs' alleged breach of their contractual duty not to compete by providing neonatal services to the Hospital does not necessarily require or imply that

Plaintiffs have by this same conduct breached their duty in tort not to intentionally induce the Hospital to breach the Hospital Agreement.

27. The Court thus concludes that Defendants' wrongful interference counterclaim is based on Plaintiffs' common law duty to refrain from interfering in the contractual and business affairs of others, which, as pleaded, is a duty separate and distinct from any obligations imposed by the Employment Contracts. The economic loss rule therefore does not bar Defendants' Counterclaim. *See, e.g.*, *Provectus Biopharmaceuticals, Inc. v. RSM US LLP*, 2018 NCBC LEXIS 101, at *55 (N.C. Super. Ct. Sept. 28, 2018) (declining to bar tort claims against accountant under the economic loss rule where accountant "owed a duty to competently perform its services independent of the contractual engagements between the parties"); *Austin v. Regal Inv. Advisors, LLC*, 2018 NCBC LEXIS 3, at *27 (N.C. Super. Ct. Jan. 8, 2018) (declining to bar breach of fiduciary duty claim under the economic loss rule where plaintiff had a fiduciary duty under law independent of contract).

B.     Failure to Plead Intentional Inducement

28. Plaintiffs' second argument—alleging an absence of requisite pleaded facts—posits that Defendants have not pleaded that Plaintiffs intentionally induced the Hospital both not to perform its contract with Cape Fear Neo and to refrain from further contracting with Cape Fear Neo. (Tr. 5:16–23, 15:9–17.) Defendants argue to the contrary and principally rely on Paragraphs 9 and 37 of the counterclaims for their support. (Tr. 21:13–23.)

29.     Defendants allege in Paragraph 9 that the Hospital Agreement was Cape Fear Neo's sole contractual relationship and its only source of revenue.  Paragraph 37 is more expansive and provides:

> Upon information and belief, Plaintiffs have used Cape Fear Neo's trade secrets and confidential and proprietary information to interfere with Cape Fear Neo's *business relationships and clients* and have thereby diverted income from Cape Fear Neo to Plaintiffs through the use of Cape Fear Neo's trade secrets and confidential information.

(Countercls. ¶ 37 (emphasis added).)   Defendants contend that the "business relationships" referenced in Paragraph 37 refer to Cape Fear Neo's business relationship with the Hospital and that, read together, these paragraphs provide the necessary allegations of intentional inducement to sustain Defendants' wrongful interference counterclaim under Rule 12(b)(6).

30.     The Court disagrees.  At most, Defendants have alleged that Plaintiffs entered into a contract with the Hospital and that the Hospital terminated its contract with Cape Fear Neo.  As noted above, Defendants have not alleged facts showing that Cape Fear Neo had or was negotiating for an exclusive contract to provide neonatology services at the Hospital, and the Counterclaim contains no allegations of any "purposeful conduct," "active persuasion," "request," or "petition" by Plaintiffs to induce the Hospital not to perform its contract with Cape Fear Neo or to refrain from entering a future contract with Cape Fear Neo.  *Charah, LLC v. Sequoia Servs. LLC*, 2019 NCBC LEXIS 18, at *18 (N.C. Super. Ct. Mar. 11, 2019) ("This Court has interpreted 'induce' to mean 'purposeful conduct,' 'active persuasion,

request, or petition.' " (quoting *KRG New Hill Place, LLC v. Springs Invs., LLC*, 2015 NCBC LEXIS 20, at \*14–15 (N.C. Super. Ct. Feb. 27, 2015))).

31. The Court therefore concludes that the Motion should be granted and that Defendants' counterclaim for wrongful interference should be dismissed. *See, e.g., Se. Anesthesiology Consultants*, 2019 NCBC LEXIS 52, at \*31, \*34–35, \*37–38 (N.C. Super. Ct. Aug. 20, 2019) (dismissing claims for tortious interference with contract and prospective business relationships and economic advantage where plaintiffs failed to sufficiently plead inducement). Because it appears to the Court that Defendants' pleading deficiencies may potentially be cured by amendment, however, the Court elects to dismiss Defendants' Counterclaim without prejudice. *See, e.g., First Fed. Bank v. Aldridge*, 230 N.C. App. 187, 191, 749 S.E.2d 289, 292 (2013) ("The decision to dismiss an action with or without prejudice is in the discretion of the trial court[.]").

IV.

CONCLUSION

32. **WHEREFORE**, the Court hereby **ORDERS** that Plaintiffs' Motion is **GRANTED**, and Defendants' counterclaim for wrongful interference is hereby **DISMISSED** without prejudice.

**SO ORDERED**, this the 16th day of October, 2020.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Chief Business Court Judge