In re FORD MOTOR CO. SPEED CON-
TROL DEACTIVATION SWITCH
PRODUCTS LIABILITY LITIGA-
TION.

MDL No. 1718.

United States District Court,
E.D. Michigan,
Southern Division.

Sept. 29, 2009.

Order on Clarification and
Reconsideration Jan.
4, 2010.

Michael A. Caddell, Caddell & Chapman, Houston, TX, for Michael T. Iley, Marla K. Iley, Joseph T. Whittington, Marcus Ebow, Dana C. Gray, John Smith, David Guillory, Eric Moore, Har-

dy Pollard Abel Sanchez, Culema Sanchez, Brenda Shaver, Brian Folsom, April Folsom, Wesley Grindstaff, Amy Grindstaff, Robert M. Hughes, Progressive Insurance Company as Subrogee of Robert M. Hughes, Robert Lively, Allstate Insurance Company as Subrogee of Doris Lively, Kellee Charles, B.C.A Minor, M.C.A Minor, Chester Franklin, Jesus Lopez, Maria Flores, Paula Vanduzee, Dean Richard, Jeremy Wimley, Cherie Vicsek, Todd Vicsek, Mike Thomas, Janie Thomas, Linwood Hall, Edward Foerster an Illinois Resident, for the use and benefit of Metropolitan Property and Casualty Insurance Company, Jon Minson, J.D. Morrison, Brannon Justice, Erica Justice-Individually and as next friend of KMJ, A Minor, Kmj-A Minor, by next friend Erica Justice, State Farm Mutual Automobile Insurance Company, Joel Radford, Hanover Insurance Company-On Behalf of Williams Tool and Die Company, Rose Mary Samano, Hartford Fire Insurance Company, as Subrogee of Donald Bramlage and Janet Bramlage, Delica D. Lewis; Individually and as Statutory Beneficiaries of Deceased, Carla Lewis Mitchell, Carl Mitchell, New Jersey Manufacturers Insurance Company as Subrogee of Williams Tool and Die Company, Incorporated, Rhonda K. Hamlin, Vivian J. Hamlin, California State Automobile Association, State Farm Fire and Casualty Company, Luke Parkes, Tammy Parkes, Terry R. Hamlin, Rudolpho Reyes, Dominga Reyes, Nationwide Property and Casualty Insurance Company as Subrogee of Robert Milligan, Janet Bramlage, Donald Bramlage, John Shaver, Jennifer Shaver, Michael Shaver, Charles Mitchell, Vincent Green, Len McCombs, Theresa McCombs, Ronald Clements, David M. Wise, Matthew Rindlisbacher, Cheryl Rindlisbacher, Nancy Kiger, Carroll S. Pedigo, Raymond E. Pedigo and Cotton States Mutual Insurance Co.

Gary P. Koederitz, Koederitz & Wilkins, Baton Rouge, LA, for Joseph T. Whittington.

Joseph W. Phebus, Phebus and Koester, Urbana, IL, for Dana C. Gray.

Clayton Arthur Larsh Davis, Lundy & Davis, Lake Charles, LA, for John Smith, David Guillory.

Charles R. Houssiere, III, Houssiere & Durant, Houston, TX, for Eric Moore, Hardy Pollard, Abel Sanchez, Culema Sanchez.

John Scott Husser, Rome, GA, for Brian Folsom, April Folsom, Wesley Grindstaff, Amy Grindstaff.

Thomas Howard Leach, Metairie, LA, for Robert M. Hughes, Progressive Insurance Company as Subrogee of Robert M. Hughes.

Alton T. Moran, Baton Rouge, LA, for Robert Lively.

Charles Edward Riley, William Matthew Blackston, Simon, Peragine, New Orleans, LA, for Allstate Insurance Company as Subrogee of Doris Lively.

Bradley G. Frizzell, David C. Laborde, Lafayette, LA, for Kellee Charles, B.C.A Minor, M.C.A Minor.

Mark L. Aschermann, Houston, TX, for Chester Franklin.

Uchechi Okechukwu Nwakanma, Houston, TX, for Jesus Lopez, Maria Flores.

Lewis Stephen Kahn, Kahn Gauthier Swick, New Orleans, LA, for Paula Vanduzee.

David Winston Ardoin, Matthew F. Block, Block Law Firm, Thibodaux, LA, for Dean Richard.

Natashia Carter Benoit, Patti Durio Hatch, Travis J. Turner, Walter C. Dumas, Baton Rougeq, LA, for Jeremy Wimley.

Philip O. Watts, Watts & Watts, Oklahoma City, OK, for Cherie Vicsek, Todd Vicsek.

Bradley T. Hayes, Natchez, MS, for Mike Thomas, Janie Thomas.

Jeffrey J. Lowe, St. Louis, MO, for Linwood Hall.

William G. Aimonette, Clausen Miller, Chicago, IL, for Edward Foerster an Illinois Resident, for the use and benefit of Metropolitan Property and Casualty Insurance Company Cary D. Dooley, Eric D. Cotton, Cathcart and Dooley, Oklahoma City, OK, for Jon Minson, J.D. Morrison.

Richard Wesley Kelley, Christopher B. Hall, Cook, Hall, Atlanta, GA, for Brannon Justice, Erica Justice-Individually and as Next Friend of KMJ, A Minor, KMJ-A Minor, By Next Friend Erica Justice.

Bradley R. Hansmann, Brown & James, St. Louis, MO, Philip T. Carroll, Cozen O'Connor, Chicago, IL, for State Farm Mutual Automobile Insurance Company.

Robert T. Dassow, Indianapolis, IN, for Joel Radford.

Bruce N. Moss, Black, Duggan, Troy, MI, for Hanover Insurance Company-On Behalf of Williams Tool and Die Company.

William T. Sebesta, Doyen Sebesta, Houston, TX, for Rose Mary Samano.

Denise M. Anderson, Kristina L. Marsh, Butler Pappas, Tampa, FL, for Hartford Fire Insurance Company, as Subrogee of Donald Bramlage and Janet Bramlage.

Jennifer L. Mahnke, Hasten & Hansen, Jeffrey Hansen, Arlington, TX, for Carla Lewis Mitchell, Carl Mitchell.

Nicole M. Downs, Hoagland, Longo, New Brunswick, NJ, for New Jersey Manufacturers Insurance Company as Subrogee of Williams Tool and Die Company, Incorporated.

Raphael T. Glapion, Midwest City, OK, for Rhonda K. Hamlin, Vivian J. Hamlin, Terry R. Hamlin.

Kevin Kay Cholakian, San Francisco, CA, for California State Automobile Association.

Alessandro Sabatino, Zeehandelar, Sabatino & Associates, L.L.C., Columbus, OH, for State Farm Fire and Casualty Company.

Christopher Posey, Edward A. Williamson Law Firm, Philadelphia, MS, Justin Strauss Cluck, Smith Whaley, Holly Springs, MS, for Luke Parkes, Tammy Parkes.

Jerry Scarbrough, Killeen, TX, for Rudolpho Reyes, Dominga Reyes.

John Barr, Burt, Barr, Dallas, TX, Matthew Peaire, Butler, Pappas, Tampa, FL, Patricia Dube, Bank of America, Houston, TX, for Nationwide Property and Casualty Insurance Company as Subrogee of Robert Milligan.

Gregory K. Mausser, John Yates Benford, Sanford, FL, Sarah A. Long, Carlton Fields, Orlando, FL, for Janet Bramlage, Donald Bramlage.

Robert B. Smith, Smith and Phelps, Jesup, GA, for John Shaver, Jennifer Shaver, Michael Shaver.

Jennifer L. McCarty, Robert Bishop, Bishop & Associates, Louisville, KY, John J. Carey, Carey & Danis, St. Louis, MO, for Charles Mitchell.

Todd L. Griffin, Little Rock, AR, for Vincent Green.

S. Wayne Easterling, Hattisburg, MS, for Len McCombs, Theresa McCombs.

James Ludlow, Indianapolis, IN, for Ronald Clements.

J. Ryan Heiskell, Bell Legal Group, James E. Bell, Georgetown, SC, for David M. Wise.

Robert Gilchrist, Eisenbert and Gilchrist, Daniel O. Duffin, Salt Lake City,

UT, for Matthew Rindlisbacher, Cheryl Rindlisbacher.

Charles E. Schaub, Mark R. Pharr, Galloway, Johnson, Lafayette, LA, for Allstate Indemnity Insurance Company as Partial Subrogee of Deanna Langlois, Allstate Property and Casualty Company as Partial Subrogee of Deanna Langlois.

Cory S. Fein, Cynthia B. Chapman, Caddell & Chapman, Houston, TX, Jeffrey J. Lowe, Michael Flannery, Carey and Danis, St. Louis, MO, for Nancy Kiger, Carroll S. Pedigo, Raymond E. Pedigo.

Pamela Lewis, pro se.

John B. Hayes, Hayes & Magrini, Oklahoma City, OK, for Universal Underwriters Insurance Company.

Bo Randle Brock, Chris H. Deaton, Deaton & Deaton, Tupelo, MS, for Metropolitan Property and Casualty Insurance Company.

Earnestine Alexander, Jackson, MS, for Jimmy Black. Darlene Black.

Robert Gilchrist, Eisenbert and Gilchrist, Salt Lake City, UT, for David A. Brown, Sela Brown.

Marisa L. Saber, Philip T. Carroll, Cozen O'Connor, Chicago, IL, for State Farm Fire and Casualty Company, Jason Howes, Kim Howes.

William J. Hoffmann, Grotefeld & Hoffmann, Geneva, IL, fro State Farm Fire and Casualty Company.

H. Evan Williams, Jennifer A. Seidler, Jonathan K. Barger, O'Hagan, Smith, St. Charles, IL, Warren R. Wilkosz, O'Hagan, Smith, St. Charles, MI, for General Casualty Other Judith Vogler Other Michael Vogler.

Francisco J. Rodriguez, Rodriguez & Tovar, McAllen, TX, for San Juanita Hinojosa.

Judith Berkan, Mary Jo Mendez-Vilella, Berkan & Mendez, San Juan, PR, for Jose A. Rodriguez-Reyes, Juan Rodriguez-Acevedo, Urbana Reyes, Nancy Rivera-Cintron, Conjugal Partnership Rodriguez-Rivera.

Charles R. Houssiere, III, Houssiere & Durant, Randal Kauffman, Houston, TX, for Andrea Valuri.

Edward A. Goodman, Jay Max Kilpatrick, Young Williams P.A., Jackson, MS, for State Farm Fire And Casualty Company, Dennis Aultman.

Kimberly Geisler, Scott, Dukes, Birmingham, AL, Kurt F. Hausler, Howard M. Widis, Quick, Widis, Charlotte, NC, for Jerry P. Taylor, USAA General Indemnity Company.

Gilchrist M. Gibson, Shivers and Associates, Alpharetta, GA, for Phoenix Insurance Company; Donna & Barney Justice.

Michael T. Taylor, Thomas X. McAndrew, Siana, Bellwoar & McAndrew, LLP, Chester Springs, PA, for West Penn Township.

John S. Simmons, Columbia, SC, for Justin Parrish, Leslie Parrish.

Steven A. Kluxen, Methfessel & Werbel, Edison, NJ, for Preferred Mutual Insurance Company.

John B. Mesirow, Mesirow And Stravitz, Washington, DC, for Harleysville Mutual Insurance Company.

Lourdes Bernal-Dixon, Daniels, Kashtan, Tampa, FL, for Stasha Northcutt.

Robert Harris Smalley, McCamy, Phillips, Dalton, GA, for Juan Washington Individually and as Administrator of the Estate of Blake Simone Washington, and as Next Friend, Representative and Surviving Spouse of Tanika Washington, Deceased, as Next Friend and Guardian of Pryce Washington, Brannon Washington.

Eric D. Miller, Matthew P. Bonham, Miller & McMenamy, Atlanta, GA, for Philip A. Meade.

Todd J. Bialous, Gainsburgh, Benhamin, New Orleans, LA, for Darren Langlois; Individually and on behalf of ML and ML, Minor Children.

Scott M. Keller, Dallas, TX, for Jose Juan Fabel, Gerardo Fabela.

Karen D. Fultz, Cozen O'Connor, Atlanta, GA, for Cotton States Mutual Insurance Co.

Don M. Ely, Jr., Jacksonville, TX, pro se.

Sopa N. Ely, Jacksonville, TX, pro se.

Eric G. Hughes, Wright Berry Hughes & Moore, Arkadelphia, AK, for Shelter Mutual Insurance Company, State Farm Mutual Automobile Insurance Company.

Andrew J. McGuinness, Dykema Gossett, Ann Arbor, MI, for Karl Flammer Ford, Incorporated.

Wendy Frank Lumish, Carlton Fields, Miami, FL, for Sawgrass Ford, Incorporated.

Adolfo R. Rodriguez, Basheer Ghorayeb, Christy L. Naylor, Wilson C. Aurbach, Dallas, TX, Alessandra Maria Rosa-Tirado, Guzman & Steffens, Alison D. Kennamer, Manuel A. Guzman-Rodriguez, Guzman & Steffens, San Juan, PR, Allen V. Davis, Hilliard F. Kelly, Michael B. Alker, Philip A. Dominique, Robert William Maxwell, McCranie Sistrunk, Covington, LA, Andrew B. Cooke, Susan W. Romaine, Flaherty, Sensabaugh, Charleston, WV, Andrew L. Richardson, Barbara E. Cordell, Mary Quinn-Cooper, Vani Singhal, William S. Leach, Eldridge, Cooper, Tulsa, OK, Barry Wayne Ford, Everett E. White, Robert Ferris Walker, Walker W. Jones, Baker, Donelson, Jackson, MS, Bryon J. Benevento, Christopher J. Martinez, Snell & Wilmer, Salt Lake City, UT, Charles S. Ofstein, James Daniel Sloan, Michael J. Borree, Donohue, Brown, Chicago, IL, Charles Kyle Reed, McLendon West Garrett, Michael R. Boorman, Suneel C. Gupta, Thomas J. Strueber, McKenna, Long, Atlanta, GA, Christopher Kiger, Smith, Anderson, Raleigh, NC, Damond Kelly Garza, Prichard, Hawkins, San Antonio, TX, David C. Marshall, Turner, Padget, Columbia, SC, Deborah Jean Bullion, McGlinchey, Stafford, Sugan Land, TX, Denis P. Riva, Bowmand And Brooke, Richmond, VA, Elizabeth B. Wright, Thompson, Hine, Cleveland, OH, Evan N. Kramer, Thompson, Coe, Joseph A. Callier, Callier & Garza, William R. Moye, Thompson, Coe, Houston, TX, Francis M. McDonald, Joshua D. Moore, Sarah A. Long, Scott A. Richman, Carlton Fields, Orlando, FL, Grant T. McFarland, Prichard, Hawkins, San Antonio, TX, J. Randolph Bibb, Sarah C. McBride, Waller, Landsen, Nashville, TN, James C. Rather, McCranie, Sistrunk, Metairie, LA, Jeffrey J. Mortier, Joshua B. Fleming, Kevin C. Schiferl, Locke Reynolds, Indianapolis, IN, Jeffrey D. Wood, Wright, Lindsey, Little Rock, AR, John A. McCauley, Venable, Baltimore, MD, Kevin M. Murphy, Thompson, Miller, Louisville, KY, Kristen Dennison, Campbell, Campbell, Wayne, PA, Matthew James Growcock, Springfield, MO, Michele Noble, Thompson Hine, Columbus, OH, Penelope A. Dixon, Carlton Fields, Tampa, FL, Peter B. Hoffman, Baker & Sterchi, Thomas J. Palazzolo, Bryan Cave LLP, St. Louis, MO, Randall D. Haimovici, Sheila M. Salomon, Shook, Hardy, San Francisco, CA, Robert W. Sauser, Baker, Donelson, Chattanooga, TN, Ronald D. Wamsted, Thompson, Coe, Austin, TX, Thomas M. Hanson, Dykema Gossett, Ann Arbor, MI, Tiffany M. Alexander, Campbell, Campbell, Woodbury, NJ, Timothy Kuhn, Dykema Gossett, Detroit, MI, for Ford Motor Company.

Steve Charles Dollinger, Preston & Cowan, Houston, TX, for Trailer Wheel and Frame Company.

Bradley James Bulthuis, Colin P. Smith, Holland and Knight, Chicago, IL, Eric J.

Mayer, Susman Godfrey, Houston, TX, Alfred B. Adams, Holland & Knight, Altanta, GA, for Texas Instruments, Incorporated, Cavin's Auto Sales, Sensata Technologies, Incorporated.

Alfred B. Adams, Holland & Knight, Altanta, GA, Keith D. Munson, Womble, Carlyle, Greenville, SC, Robert J. Beckham, Holland & Knight, Jacksonville, FL, Sean P. McDonough, Dougherty, Leventhal, Moosic, PA, Toby M. McKinstry, Tomlinson and O'Connell, Oklahoma City, OK, for Texas Instruments, Incorporated.

Brian Hensley, Thompson, Coe, Austin, TX, for Auto, Etc., Limited.

Terry Carnes, Dallas, TX, for East Ford, Incorporated, Progressive Insurance Company.

Heather MacGregor Hawkins, Thompson, Hine, Cincinnati, OH, Alison D. Kennamer, Rodriguez, Colvin, Brownsville, TX, Barry J. Goodman, Goodman Acker, Southfield, MI, for Ford Motor Company Speed Control Deactivation Switch Products Liability.

Gary M. Farmer, Jr., Freedland, Farmer, Weston, FL, for Brenda Shaver.

## *OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS FOURTH AMENDED MASTER COMPLAINT*

BERNARD A. FRIEDMAN, District Judge.

### I. Introduction

Plaintiffs have filed a Fourth Amended Master Complaint ("FAMC"), which Defendant seeks to dismiss. The FAMC alleges different claims for two separate groups of plaintiffs: i) the non-incident or "los of use" plaintiffs assert Counts 1–3; and ii) the incident plaintiffs, who are those alleging fires caused by a failed speed control deactivation switch ("SCDS") in their vehicles, assert Counts 4–5. Defendant seeks dismissal of Counts 1–3, and partial dismissal of Counts 4 and 5. Defendant further seeks dismissal of all claims that Plaintiffs did not allege in the FAMC. Defendant contends that all claims alleged in the pre-consolidation complaints, including claims against any defendant other than Ford but not alleged in Plaintiffs' FAMC, should be dismissed pursuant to the Court's Case Management Order No. 1 ("CMO").

### II. Background

The history and subject matter of this case have been exhaustively summarized in the Court's earlier decisions. The Court, in its CMO, required Plaintiffs to file a consolidated amended master complaint setting forth all claims presented in the cases transferred to this MDL proceeding. The present FAMC is the result of a stipulation by the parties to permit Plaintiffs to file a FAMC to address an additional recall vehicle population[1], and to add named plaintiffs from each of the state jurisdictions that are currently represented in this MDL proceeding. In addition, the parties stipulated to allow Plaintiffs to add various consumer protection statutory claims. The FAMC names plaintiffs residing in sixteen states. The four named loss of use plaintiffs reside in California, Louisiana and Texas. The remaining plaintiffs are all incident plaintiffs, who reside in fourteen states: Arkansas, Florida, Georgia, Illinois, Kentucky, Massachusetts, Michigan, Mississippi, New Jersey, North Carolina, Oklahoma, South Carolina, Texas and Utah.

---

**1.** Ford has expanded its recall multiple times, bringing the total recalled vehicles up to almost 10 million vehicles.

Both the loss of use and incident plaintiffs seek monetary damages. The loss of use plaintiffs seek damages for: (1) the excessive price paid for vehicles containing an allegedly defective SCDS; (2) the excessive revenues unjustly obtained by Ford; (3) the loss of use of plaintiffs' vehicles during the time of repair; (4) the inconvenience and disruption suffered during the repairs; and (5) the loss of use of the cruise control function during the period when the SCDS was disconnected while awaiting replacement parts. The incident plaintiffs seek damages for: (1) any property damage allegedly caused by a fire originating from the SCDS; (2) any personal injury and/or mental anguish resulting from the fire; (3) the inconvenience and disruption of their work and activities resulting from the fire; and (4) punitive damages. Incident plaintiffs also seek damages for the loss of their Ford vehicles.

## III. Legal Standard

The purpose of a Rule 12(b)(6) motion is "to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638(6th Cir.1993). In determining a Rule 12(b)(6) motion, a court "must accept all well-pleaded factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff." *Benzon v. Morgan Stanley Distribs., Inc.*, 420 F.3d 598, 605 (6th Cir.2005). "[W]hen reviewing a 12(b)(6) motion to dismiss, the court only examines whether the pleadings state a claim for which relief may be granted, and does not review additional evidence." *Audi AG & Volkswagon of Am., Inc. v. D'Amato*, 341 F.Supp.2d 734, 753–54 (E.D.Mich.2004).

## IV. Analysis

### A. Plaintiff Kiger's California Unfair Competition Claim

Plaintiff Kiger is the only loss of use plaintiff asserting a claim under California's Unfair Competition Law ("UCL"). Kiger alleges that she owned a 1999 Ford Explorer, and its SCDS was defective. She received a notification in August 2007, pursuant to Ford's voluntary recall campaign, and then brought her vehicle to a Ford dealer to deactivate her cruise control until replacement parts were available. Ford replaced Kiger's SCDS in May 2008. Plaintiff's claim for damages is for the loss of use of her cruise control for approximately nine months.

The UCL protects "both consumers and competitors by promoting fair competition in commercial markets for goods and services." *McKell v. Wash.Mut., Inc.*, 142 Cal.App.4th 1457, 49 Cal.Rptr.3d 227, 240 (2006). The UCL makes illegal business actions that are unlawful, unfair or fraudulent. Cal. Bus. & Prof.Code § 17500. It prohibits "unfair competition," defined as "any unlawful, unfair or fraudulent business act or practice" and any "unfair, deceptive, untrue or misleading advertising and any act prohibited by" California's False Advertising Law. *Id.* The UCL prohibits acts or practices under four prongs: 1) unlawful; 2) unfair; 3) fraudulent; or 4) false advertising under California's False Advertising Law ("FAL"). To state a claim under the UCL, a plaintiff must prove that she "has suffered injury in fact and has lost money or property as a result of the unfair competition" under one of the four prongs. Cal. Bus. & Prof.Code § 17204. Kiger contends that she has successfully alleged that Ford engaged in unlawful, unfair and fraudulent business practices.

### 1. The Unfair Prong

The parties in this matter dispute the appropriate test to be applied to determine whether Kiger's claim satisfies the unfair prong of the UCL.

Plaintiff asserts that the established unfairness inquiry involves a balancing test weighing "the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *State Farm Fire & Cas. Co. v. Super. Ct.*, 45 Cal.App.4th 1093, 53 Cal.Rptr.2d 229, 234 (1996). Plaintiff argues that because the balancing test is fact intensive, it is not generally subject to resolution on a motion to dismiss. *Progressive W. Ins. Co. v. Yolo County Super. Ct.*, 135 Cal.App.4th 263, 37 Cal.Rptr.3d 434, 451 (2005). Plaintiff then bases its argument on the balancing test employed in a 1999 California Supreme Court decision, *Cel–Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999). In establishing a balancing test for the fairness inquiry, the *Cel–Tech* court held that, in the context of competitor claims, a finding of unfairness must be tethered to a legislatively declared policy. The court made it clear in a footnote that its requirement was not applicable in the consumer context. *Id.* at 565, 973 P.2d 527.

■■■ Since the *Cel–Tech* opinion, many courts, including California Courts of Appeals and the Ninth Circuit, have applied *Cel–Tech's* holding to consumer cases. *See, e.g., Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017 (9th Cir.2008); *Daugherty v. American Honda Motor Co., Inc.*, 144 Cal.App.4th 824, 51 Cal.Rptr.3d 118 (Cal.Ct.App.2006). At issue here is whether this Court should adopt such application. The Court holds that the test to be applied, as outlined by the California Court of Appeals in *Daugherty*, and adopted by the Ninth Circuit in *Clemens*, is controlling. A District Court is bound by the rulings of the Circuit Court in which it sits. *Yong v. INS*, 208 F.3d 1116, 1119 n. 2 (9th Cir.2000); *McClellan v. Young*, 421 F.2d 690, 691 (6th Cir.1970). Here, where the 9th Circuit has adopted a holding, as laid out by the California Court of Appeals, there is no question that this Court must follow its precedent.

■■■ In *Daugherty*, the California Court of Appeals held that no claim was stated under the UCL in a matter where car buyers filed a class action against the manufacturer, alleging that it violated, among other things, the UCL by failing to disclose an engine defect that did not cause malfunctions in the cars until after the warranty expired. *Daugherty*, 144 Cal. App.4th at 824, 51 Cal.Rptr.3d 118. In analyzing the unfair prong of the UCL, the Court explained that it had formulated a test for determining whether a practice is unfair in consumer cases under the UCL. *Id.* at 839, 51 Cal.Rptr.3d 118. It stated that it was "guided by *Cel–Tech*" in concluding that "the factors defining unfairness are the same as those used under section 5 of the Federal Trade Commission Act," and thus, "an act or practice is unfair if the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or competition, and is not an injury that the consumers themselves could reasonably have avoided." *Id.*

The Court determined that it did not need to analyze all five factors in the test because the alleged conduct failed to meet the first factor; the injury to consumers was not substantial, and the Court doubted it could be characterized as a cognizable injury at all. The Court summarized, "[i]n short, the failure to disclose a defect that might, or might not, shorten the effective life span of an automobile part that functions precisely as warranted throughout the term of its express warranty cannot be characterized as causing a substantial inju-

ry to consumers, and accordingly does not constitute an unfair practice under the UCL." *Id.* at 839, 51 Cal.Rptr.3d 118. The Ninth Circuit subsequently adopted this holding, verbatim. *Clemens,* 534 F.3d at 1027.

■ Here, Kiger's claim under the unfair prong is similar to the claims rejected in *Clemens* and *Daugherty.* Because Kiger never experienced a failure with her SCDS, the existence of an alleged SCDS defect, which was not even brought to her attention until well after the warranty period, and presumably functioned as warranted during the warranty period, cannot constitute an unfair business practice.

## 2. The Fraud Prong

Plaintiff contends that she has plead a UCL claim under the fraud prong of the statute. At issue here is whether Kiger actually relied on Ford's representations regarding its SCDS. The California Supreme Court recently explained that "there is no doubt that reliance is the causal mechanism of fraud." *In re Tobacco II Cases,* 46 Cal.4th 298, 326, 93 Cal. Rptr.3d 559, 207 P.3d 20 (2009). The Court then concluded that the "language [of the UCL] imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong." *Id.* Accordingly, the Court held, "we conclude that a plaintiff must plead and prove actual reliance to satisfy the standing requirement of section 17204 but, consistent with the principles set forth above, is not required to necessarily plead and prove individualized reliance on specific misrepresentations or false statements." *Id.* at 328, 93 Cal. Rptr.3d 559, 207 P.3d 20.

■ Here, Plaintiff has not alleged actual reliance, and instead, only argues a "likely to be deceived" standard in her response brief. Response Br. At 12–14. The FAMC, in pleading Plaintiff's UCL claim, states that "Ford's representations likely would deceive a reasonable consumer into believing that their vehicles would be equipped with a functioning, non-defective cruise control system." FAMC ¶ 62. It further states that "reasonable consumers ... were likely to be deceived into believing that the Ford Vehicles are equipped with a fulling [sic] function [sic] and operational cruise control function." FAMC ¶ 63. Plaintiff does not allege that she actually relied on Ford's representations. Plaintiff's failure to allege actual reliance precludes a successful claim under the fraud prong of the UCL.

## 3. The Unlawful Prong

Plaintiff relies on her claim under the California Consumer Legal Remedies Act ("CLRA") as the unlawful act to support the "unlawful" prong of her UCL claim. Analysis of Plaintiff's CLRA claim, below determines that Plaintiff has not properly plead a CLRA claim. Accordingly, Plaintiff fails plead a successful claim under the unlawful prong of the UCL, and Plaintiff's UCL claim is dismissed in its entirety.

## B. Plaintiff Kiger's CLRA Claim

The parties dispute whether Plaintiff provided pre-filing notice on her CLRA claim. Pre-filing notice is a condition precedent to stating a CLRA claim seeking damages. Cal. Civ.Code § 1782 provides:

(a) Thirty days or more prior to the commencement of an action for damages pursuant to this title, the consumer shall do the following:

(1) Notify the person alleged to have employed or committed methods, acts or practices declared unlawful by Section 1770 of the particular alleged violations of Section 1770.

(2) Demand that the person correct, repair, replace, or otherwise rectify

the goods or services alleged to be in violation of Section 1770. The notice shall be in writing and shall be sent by certified or registered mail, return receipt requested, to the place where the transaction occurred or to the person's principal place of business within California. Cal. Civ.Code § 1782(a).

Alternatively, a consumer may bring an action for "injunctive relief," give notice of the intent to add a damages claim, and then amend their complaint to add a damages claim after the 30–day notice period has passed. *Id.* § 1782(d). Specifically, subsection (d) states:

> (d) An action for injunctive relief brought under the specific provisions of Section 1770 may be commenced without compliance with subdivision (a). Not less than 30 days after the commencement of an action for injunctive relief, and after compliance with subdivision (a), the consumer may amend his or her complaint without leave of court to include a request for damages. The appropriate provisions of subdivision (b) or (c) shall be applicable if the complaint for injunctive relief is amended to request damages.

Plaintiff asserts that her claim falls within this exception. Plaintiff, in the FAMC, seeks restitution and disgorgement, and states an express intent to amend to add additional claims for damages. FAMC ¶¶ 91–93. Plaintiff states that while she makes a CLRA claim for restitution and disgorgement, "not withstanding any other statements in this Complaint, Plaintiffs specifically do not seek monetary damages in conjunction with their CLRA claims, and will not do so, until this 30–day period has passed." *Id.* at ¶ 94. The parties dispute whether

Plaintiff's claim for restitution and disgorgement is a request for monetary damages. This issue, however, is irrelevant.

■ If, as Plaintiff claims, she is not seeking damages, then her claim clearly does not fall within subsection (a) of the CLRA. Additionally, since Plaintiff's claim does not seek injunctive relief [2], neither does it fall under subsection (d) of the CLRA. Accordingly, Plaintiff's claim fails to state a claim under either relevant subsection of the CLRA, and must be dismissed.

### C. Loss of Use Plaintiffs' Unjust Enrichment Claim

Count III of the FAMC makes up the loss of use Plaintiffs' unjust enrichment claim. This claim alleges that "Ford manufactured and sold the Ford Vehicles with a defective SCDS Switch," and that "Ford accepted or retained the benefits conferred by [plaintiffs] including payment for a functioning cruise control system, despite Ford's knowledge of the design defect in the Ford Vehicles." FAMC ¶¶ 96–100.

#### 1. California and Texas Unjust Enrichment Claims

■ The California and Texas Plaintiffs' unjust enrichment claims must be dismissed. As an equitable remedy, unjust enrichment is not available where there is an adequate remedy at law. Under both California and Texas law, a plaintiff cannot maintain a claim for unjust enrichment where the subject matter of the claim is covered by an express agreement. *California Medical Assn. v. Aetna U.S. Healthcare of California, Inc.,* 94 Cal. App.4th 151, 172, 114 Cal.Rptr.2d 109 (2001); *TransAmerican Natural Gas*

---

**2.** Plaintiff, in her brief, purports to seek injunctive relief. However, the FAMC, in the CLRA count, seeks only restitution and dis-

gorgement. While claims for restitution and disgorgement are equitable in nature, they are not "injunctive relief."

*Corp.v. Finkelstein,* 933 S.W.2d 591, 600 (Tex.App.1996).

Here, Ford's express warranty addresses defects related to its products, including those related to the SCDS. At issue, though, is whether an express warranty is equivalent to an express contract. Plaintiffs contend that while an express contract may preclude an unjust enrichment claim, an express warranty is not its equivalent, and does not preclude such a claim. And, in any event, Plaintiffs assert, contractual privity does not exist between Ford and Plaintiffs, since Plaintiffs did not purchase anything directly from Ford, thereby eliminating contractual privity.

■ Where there is an express warranty, however, both Texas and California courts have held that a purchaser's cause of action based on that express warranty does not require privity of contract with the manufacturer. *Fundin v. Chicago Pneumatic Tool Co.,* 152 Cal.App.3d 951, 957, 199 Cal.Rptr. 789 (1984); *U.S. Tire-Tech, Inc. v. Boeran, B.V.,* 110 S.W.3d 194, 198 (Tex.App.2003)("We … hold that privity of contract is not required in order to sustain a breach of express-warranty claim for purely economic losses. To hold otherwise could allow unscrupulous manufacturers who make public representations about their product's performance to remain insulated from express-warranty liability if consumers did not purchase the product directly from them.").

As privity is not required, the next consideration is whether an express warranty is the equivalent of a contract, in the context of whether unjust enrichment is a permissible count in the FAMC. Regarding the Texas Plaintiff's claim, the Fifth Circuit, applying Texas law, recognizes express warranties as contracts, and has stated "[a]n express warranty is entirely a matter of contract, wherein the seller may define or limit his obligation respecting the subject of the sale, and provide as to the manner of fulfilling the warranty or the measure of damages for its breach." *Brooks, et al. v. U.S. Fire Ins. Co.,* 832 F.2d 1358, 1372 (5th Cir.1987) (citations omitted).

In California, while not specifically recognizing an express warranty as a contract, the Court of Appeals has held that "as a matter of law, a quasi-contract action for unjust enrichment does not lie where, as here, express binding agreements exist and define the parties' rights." *California Medical Ass'n., Inc. v. Aetna U.S. Healthcare of California, Inc.,* 94 Cal.App.4th 151, 172, 114 Cal.Rptr.2d 109 (2001). Here, the existence of the express warranty defines the parties' rights.

■ Accordingly, the California and Texas claims for unjust enrichment are not proper, and are dismissed.

### 2. Louisiana Unjust Enrichment Claims

■ Louisiana loss of use plaintiffs also assert an unjust enrichment claim. However, the Louisiana Products Liability Act ("LPLA") establishes "the exclusive theories of liability for manufacturers for damage caused by their products. A claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in this Chapter." La. R.S. 9:2800.52. "Given the exclusivity of the LPLA, all causes of action inconsistent with it must be dismissed." *Grenier v. Med. Eng'g Corp.,* 99 F.Supp.2d 759, 763 (W.D.La.2000). Because plaintiffs cannot individually pursue product liability claims outside of the LPLA, their claim for unjust enrichment must be dismissed.

### D. Incident Plaintiffs' Strict Liability and Negligence Claims

Defendant seeks dismissal under the economic loss doctrine of the incident

plaintiffs' claim for the value of their vehicles in the following states: Florida, Georgia, Illinois, Michigan, Mississippi, New Jersey, North Carolina, Oklahoma and Texas.

Plaintiffs argue that as to those claims governed by state laws other than Florida's or Mississippi's, the application of the economic loss doctrine is subject to factual determinations that must be made on an individual basis and cannot be resolved on a motion to dismiss.

The FAMC alleges as follows:

The Incident Plaintiffs and Class members suffered damages including but not limited to:

A. Damage or destruction of their Ford Vehicle and the resulting loss of use thereof,

B. Damage or destruction to other property and the resulting loss of use thereof as the result of a fire in a Ford Vehicle,

C. Inconvenience and disruption of life resulting for a fire in a Ford Vehicle; and

D. In some cases, psychological or physical injuries or death, resulting from a fire in a Ford Vehicle.

FAMC ¶ 39.

### 1. Florida and Mississippi

As plaintiffs do not refute Defendant's arguments concerning Florida and Mississippi law, those plaintiffs' strict liability and negligence claims are dismissed.

### 2. Georgia

■ In Georgia, the economic loss rule is defined as follows: In the absence of an accident, there can be no action in negligence to recover the loss of the economic value of a defective product, unless there is some personal injury or damage to other property. *Vulcan Materials Co., Inc. v. Driltech, Inc.*, 251 Ga. 383, 306 S.E.2d 253 (1983). More specifically, the Georgia

Court of Appeals has explained, "(W)here there is no accident, and no physical damage, and the only loss is a pecuniary one, through loss of the value or use of the thing sold, or the cost of repairing it, the courts have adhered to the rule ... that purely economic interests are not entitled to protection against mere negligence, and so have denied the recovery." *Long v. Jim Letts Olds., Inc.*, 135 Ga.App. 293, 295, 217 S.E.2d 602 (1975).

■ In *Vulcan*, the Supreme Court of Georgia, in analyzing the economic loss rule and the accident exception as applied in other states, held, "(1) Under Georgia law, there is an accident exception to the general rule that an action in negligence does not lie absent personal injury or damage to property other than to the allegedly defective product. (2) An "accident" should be defined as a sudden and calamitous event which, although it may only cause damage to the defective product itself, poses an unreasonable risk of injury to other persons or property." *Vulcan*, 251 Ga. at 387, 306 S.E.2d 253.

In reaching this conclusion, the Supreme Court of Georgia looked favorably upon the decisions of other courts that distinguished between "defects of quality, evidenced by internal deterioration or breakdown [which] are assigned to the economic loss category," and those resulting in "sudden and calamitous damage [which] will almost always result in direct property damage" and are recoverable in tort. *Vulcan*, 251 Ga. at 386, 306 S.E.2d 253 (quoting *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165, 1169–1173 (3d. Cir.1981)).

In addition, the *Vulcan* court noted the distinction between recovery for the loss of value from a defect in a product, and damage to the product caused by the defect at issue. *Id.* at 386, 306 S.E.2d 253. While the first kind of injury constitutes econom-

ic loss that is recoverable only under warranty law, and prohibited under the economic loss rule, for the second type of injury, where the defective product itself is damaged, an inquiry must take place as to whether the particular injury amounts to economic loss or physical damage. In such case, "the items for which damages are sought, such as repair costs, are not determinative. Rather, the line between tort and contract must be drawn by analyzing interrelated factors such as the nature of the defect, the type of risk, and the manner in which the injury arose." *Id.* at 387, 306 S.E.2d 253.

■ Here, the Court finds that the economic loss rule bars recovery attributed to the loss of economic value of plaintiffs' vehicles due to the SCDS. However, whether other tort recovery is permissible requires a fact intensive inquiry regarding the type of damage sustained, and the cause of such damage. Accordingly, complete dismissal of this claim is not appropriate at this juncture.

### 3. Illinois

In Illinois, "[e]conomic loss has been defined as damages for inadequate value, cost of repair and replacement of the defective product, or consequent loss of profits without any claim of personal injury or damage to other property." *Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443, 449 (1982). As in Georgia, "the policy differences between the law of torts and contracts determine whether a claim is one for pure economic loss." *Am. Xyrofin, Inc. v. Finn–Cal Sweetener Co.*, 230 Ill.App.3d 662, 172 Ill.Dec. 289, 595 N.E.2d 650, 656 (1992).

■ Illinois courts, however, are clear that the economic loss rule prohibits recovery for damage to an entire product, not simply damage to the faulty component within a product. In Illinois, a plaintiff may not recover in tort for damage to the

faulty product itself. *Trans States Airlines v. Pratt & Whitney Canada, Inc.*, 177 Ill.2d 21, 224 Ill.Dec. 484, 682 N.E.2d 45 (1997); *Metropolitan Property and Casualty Insurance Company v. James McHugh Construction Co.*, 1999 WL 971283 (N.D.Ill.).

■ Here, the Court finds that Illinois' economic loss rule bars recovery attributed to the loss of economic value of plaintiffs' vehicles due to the SCDS. However, whether other tort recovery is permissible requires a fact intensive inquiry regarding the type of damage sustained to items other than the Ford vehicle, and the cause of such damage. Accordingly, complete dismissal is not appropriate at this juncture.

### 4. Michigan

■ The economic loss doctrine was adopted in the Michigan Supreme Court case of *Neibarger v. Universal Coops.*, 439 Mich. 512, 486 N.W.2d 612 (1992). The economic loss doctrine, simply stated, provides that "[w]here a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only 'economic' losses." *Id.* at 520–521, 486 N.W.2d 612.

Courts of appeals in Michigan have expanded the scope of the economic loss doctrine to transactions made by consumers, as seen in *Sherman v. Sea Ray Boats*, 251 Mich.App. 41, 649 N.W.2d 783 (2002), a case heavily relied upon by Defendant.

■ *Sherman*, however, can be distinguished from the present case. As with another case recently before this Court, "[i]n the Sherman case, the court observed that the nature of damages was only the loss of economic expectation in the product ... Moreover, in Sherman, there were no tort concerns with product safety, whereas

in this case, tort concerns in product safety clearly abound. In short, the plaintiff has been injured in a manner that is traditionally considered in tort and not in contract. It is thus proper for the plaintiff be permitted to pursue a claim in tort." *Safeco Ins. Co. of America v. CPI Plastics Group, Ltd.*, 625 F.Supp.2d 508, 512 (E.D.Mich.) (internal citations omitted). In Safeco, plaintiffs suffered damage to their house as well as damage to the defective product; as in the present case, the loss complained of was not just the economic expectation in the product. Plaintiffs also allege "damage or destruction to other property and the resulting loss of use thereof . . . and in some cases, psychological or physical injuries or death, resulting from a fire in a Ford Vehicle." FAMC ¶ 39. As in *Safeco*, "in short, the plaintiff has been injured in a manner that is traditionally considered in tort and not in contract. It is thus proper for the plaintiff be permitted to pursue a claim in tort." *Safeco*, 625 F.Supp.2d at 512. However, in keeping with the reasoning of *Sherman* and *Safeco*, the Court finds that Michigan's economic loss rule bars recovery attributed to the loss of economic value of plaintiffs' vehicles due to the SCDS. However, whether other tort recovery is permissible requires a fact intensive inquiry regarding the type of damage sustained to items other than the Ford vehicle, and the cause of such damage. Accordingly, complete dismissal is not appropriate at this juncture.

### 5. New Jersey

As Defendant states in its reply brief, "there evidently is no New Jersey case that squarely answers the question presented." Reply, p. 26. Accordingly, the Court will decline the opportunity to create New Jersey case law and permit plaintiffs to proceed with their claims.

### 6. North Carolina

█ North Carolina has adopted the economic loss rule, which prohibits recovery for economic loss in tort. Instead, such claims are governed by contract law. The courts have construed the term "economic losses" to include damages to the product itself. *See North Carolina State Ports Authority v. Lloyd A. Fry Roofing Co.*, 294 N.C. 73, 240 S.E.2d 345 (1978). Where a defective product causes damage to property other than the product itself, losses attributable to the defective product are recoverable in tort rather than contract. *Reece v. Homette Corp.*, 110 N.C.App. 462, 467, 429 S.E.2d 768 (1993).

Plaintiffs, in response to Defendant's motion to dismiss, argue that, under North Carolina law, the economic loss doctrine does not apply to products liability cases in which privity of contract is absent. In support of their argument, Plaintiffs cite to *Lord v. Customized Consulting Specialty, Inc.*, 182 N.C.App. 635, 643 S.E.2d 28, 32 (2007). In *Lord*, the North Carolina Court of Appeals held that the economic loss doctrine did not bar a negligence claim by homeowners against subcontractors when there was no contract, and thus no privity, between homeowners.

*Lord*, however, is distinguished from the present case by the existence of the Limited Warranty. Unlike the situation in *Lord*, which involved a subcontractor who did not warranty his work to the homeowner, the parties here had a relationship governed by a Limited Warranty, which sounds in contract, and establishes any necessary privity for application of the economic loss doctrine.

█ In *Moore v. Coachmen Industries, Inc.*, 129 N.C.App. 389, 401, 499 S.E.2d 772 (N.C.App.1998), a case in which plaintiffs purchased a recreational vehicle and then subsequently brought suite against the manufacturer, the North

Carolina Court of Appeals held that the economic loss doctrine prevented plaintiffs from proceeding with a negligence claim against the manufacturer of the RV. In *Moore*, as in the present case, the purchase of the RV was accompanied by a limited warranty, and the RV was destroyed by a fire allegedly caused by electrical components within the RV's. Accordingly, the Court finds that North Carolina's economic loss rule bars recovery attributed to the loss of economic value of plaintiffs' vehicles due to the SCDS. However, whether other tort recovery is permissible requires a fact intensive inquiry regarding the type of damage sustained to items other than the Ford vehicle, and the cause of such damage. Accordingly, complete dismissal is not appropriate at this juncture.

### 7. Oklahoma

Ford, in its reply brief, states that it "withdraws its motion to dismiss the Oklahoma incident plaintiffs' claims for the value of their vehicles at this time, without prejudice." Reply, p. 28. Accordingly, the Court will not dismiss the Oklahoma incident Plaintiffs' claims for the value of their vehicles.

### 8. Texas

This Court previously ruled in *Moore, et al. v. Ford Motor Co.*, E.D.Mich. Case No. 05–75432 that pursuant to the Texas economic loss doctrine, Texas incident plaintiffs cannot seek the value of their Ford vehicles as part of the damages sought in their product-liability tort claims. This Court explained:

> The Economic Loss Rule bars plaintiffs' product-liability tort claims seeking recovery for any damages related to their vehicles. Under this rule, plaintiffs who sustain damage to a defective product are barred from pursuing tort claims to recover that damage. *Murray v. Ford Motor Co.*, 97 S.W.3d 888 (Tex.App.

2003); *Mid Continent Aircraft Corp. v. Curry County Spraying Service, Inc.*, 572 S.W.2d 308 (Tex.1978). Accordingly, amendment of Plaintiff's complaint to include these claims is not proper.

D.E. 130, p. 4.

 Accordingly, the Court will extend this holding to the additional Texas incident plaintiffs in this matter, and hold that the economic loss rule bars recovery attributed to the loss of economic value of plaintiffs' vehicles due to the SCDS. However, whether other tort recovery is permissible requires a fact intensive inquiry regarding the type of damage sustained to items other than the Ford vehicle, and the cause of such damage. Accordingly, complete dismissal is not appropriate at this juncture.

### E. Claims and Defendants Not Asserted In The FAMC

Defendant argues that pursuant to the Court's Case Management Order ("CMO"), all pre-consolidation claims not asserted and defendants not named in the FAMC should be dismissed. Defendant further attaches an exhibit identifying all claims alleged in the pre-consolidation complaints filed in each of the individual actions in this MDL that have not been asserted in the MDL. Dft. Exh. Q. In response, Plaintiffs contend that the Court should not dismiss with prejudice all claims not asserted in the Master Complaint, but instead enter an order notifying counsel for all Plaintiffs that they have 21 days to file a motion with the Court setting forth the claims which are in their individual complaints, but absent from the FAMC, that they still wish to pursue.

On September 2, 2009, the Court issued an Order for Additional Briefing on this matter. Both parties submitted the additional briefs, as requested, and such briefs

are considered in making the following ruling.

The Court entered CMO No. 1 on June 15, 2006, with two subsequent modifications, to govern the procedures in this MDL proceeding. The parties negotiated and stipulated to the CMO. The CMO requires that all plaintiffs in this MDL consolidate and assert their claims through one master amended complaint. It further states that the master amended complaint "shall supersede all previously-filed complaints in all SCD Switch Cases, and all subsequently-consolidated SCD Switch Cases."

The CMO provides an express, agreed-upon procedure for amendment of the master complaint when new cases are transferred to the MDL and plaintiffs in those actions seek to assert claims not already alleged in the master amended complaint. Within 21 days of transfer or consolidation, the CMO authorizes individual plaintiffs to seek "leave to further amend the Master Amended Complaint to the extent that pleading may not adequately encompass claims made in the newly-transferred or consolidated SCDS switch case." To date, Plaintiffs' Co–Lead Counsel have filed four versions of a master amended complaint over two and a half years. The final and operative complaint is the FAMC. During that period, no individual plaintiff has utilized the procedure set forth in the CMO for further amendment to assert additional claims or name additional defendants. The FAMC clearly only asserts claims against Ford, and makes no mention of claims against other defendants.

The Court finds that the CMO is not ambiguous, and very plainly puts the burden on Plaintiffs' Co–Lead Counsel to prepare pleadings on behalf of all plaintiffs, and further requires that all claims pursued be consolidated in one master amended complaint that "shall supersede all previously-filed complaints." The CMO provides a procedure for such plaintiffs to petition the court for amendment. This procedure was specifically negotiated by the parties and approved by the Court.

Defendant states that it has previously requested that an operative master amended complaint be a comprehensive statement of all the claims and all defendants, to ensure that there is no ambiguity regarding what claims plaintiffs are pursuing. Defendant states that Plaintiffs' Co–Lead Counsel previously complied with such requests in prior master complaint amendments by expanding the causes of action alleged to include claims that applied only to specific plaintiffs or groups of plaintiffs, and that Plaintiffs' Co–Lead Counsel listed all other defendants in their earlier master amended complaints.

Defendant states that prior to the filing of the FAMC, Defendant specifically requested again that Plaintiffs' Co–Lead Counsel be sure to assert all claims and name any defendants other than Ford against whom any plaintiffs intended to pursue claims. Plaintiffs' Co–Lead Counsel assured Ford that they had warned the individual plaintiffs' counsel regarding the need to assert all claims and defendants in the FAMC. Pltf. Exh. M (Plaintiff's co-lead counsel email: "When I file this Amended Complaint, I'll circulate it to all Plaintiffs' counsel with an email warning that all who want to add additional defendants or raise additional claims better speak up soon.")

Plaintiffs, in response, assert that the CMO is silent as to what an individual plaintiff must do if the Master Complaint is narrowed by amendment, as was done in this case. This argument is disingenuous, as Plaintiffs listed additional claims and specifically named individual defendants other than Ford in both its Second Amended Master Complaint and its Third Amended Master Complaint. Accordingly,

the Court finds that Plaintiffs were well-aware of their obligation, pursuant to the CMO, to specifically assert all claims and name all defendants in the FAMC.

■ The Court notes that the use of a master amended complaint serves the very purpose for which the MDL procedure was devised—namely consolidating proceedings for an efficient disposition of plaintiffs' claims. The parties' failure to abide by the CMO obfuscates this goal, as any resolution of the pending Motion to Dismiss is without finality since the individual plaintiffs would then simply go ahead with whichever claims against whichever defendants they neglected to include in the FAMC. Allowing plaintiffs to silently pursue claims and parties not included in the FAMC poses substantial uncertainty in these proceedings, again contrary to the purpose of the MDL process. All plaintiffs have been continually on notice of the need to ensure that the FAMC reflects a comprehensive statement of claims and defenses. For these reasons, the Court believes that claims and defendants not enumerated in the FAMC are deemed dismissed.

## V. Order

Accordingly,

IT IS ORDERED that Defendant's Motion to Dismiss Count I is GRANTED.

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss Count II is GRANTED.

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss Count III is GRANTED.

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss Counts IV and V are determined as follows:

Defendant's Motion to Dismiss claims regarding the laws of Florida and Mississippi are GRANTED.

Defendant's Motion to Dismiss claims regarding the laws of Georgia, Illinois, Michigan, New Jersey, North Carolina, Oklahoma and Texas is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss claims not asserted and defendants not named in Plaintiff's Fourth Amended Master Complaint is GRANTED.

## *OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO CLARIFY AND FOR RECONSIDERATION AND ISSUING REVISED ORDER ON DEFENDANT'S MOTION TO DISMISS FOURTH AMENDED MASTER COMPLAINT*

### I. Introduction

Plaintiffs have filed a Motion to Clarify and Reconsider the Court's Opinion and Order Granting in Part and Denying in Part Defendant's Motion to Dismiss Fourth Amended Master Complaint ("Order"). Following its motion for leave to respond, which was granted, Defendant filed a response.

While jointly seeking a revision to the Order with Defendant, Plaintiffs' Motion further seeks clarification of the scope of the Order as contained within the body of the Order, without moving for changes in the final ruling. In addition, the parties have filed a stipulated revised Order Granting in Part and Denying in Part Defendant's Motion to Dismiss Fourth Amended Master Complaint. This Opinion serves to address both filings.

### II. Stipulated Clarification

The Court, in its Order, states, "As Plaintiffs do not refute Defendant's arguments concerning Florida and Mississippi law, those Plaintiffs' strict liability and negligence claims are dismissed." Order,

p. 12. The parties agree that the above language could be read more broadly than Defendant requested, and jointly request that the Order be clarified to state, "As plaintiffs do not refute Defendant's arguments concerning Florida and Mississippi law, those plaintiffs' strict liability and negligence claims for the value of their vehicles are dismissed." The Court recognized in the body of its Order that Defendant's motion only sought dismissal of claims for the value of vehicles in which the defective SCD Switch cause a fire, and did not seek dismissal of claims for other damages. As the parties agree with this clarification, and the Court finds that such clarification comports with the body of its Order, the Court will grant the parties' request for clarification.

## III. Georgia Law

Plaintiffs further seek reconsideration of the Court's rulings on the application of the economic loss doctrine under Georgia law.

Defendant, in its response, requests clarification from the Court that, notwithstanding its denial of Defendant's partial motion to dismiss value-of-vehicle claims in Georgia, those claims remain subject to dismissal if plaintiffs do not prove loss to other property or personal injury. The Court will not grant this request. The Court is reluctant to consider "if-then" scenarios, and believes that this situation is best addressed in a motion for summary judgment, if such motion becomes appropriate.

### A. Economic Loss Rule

Plaintiffs seek clarification of the Court's Order regarding the economic loss rule in Georgia. While the Court made thorough legal conclusions in its analysis, the Order itself does not reflect the Court's findings regarding applicable Georgia law. The Court's Order, quoting from a Georgia Court of Appeals opinion, held that Georgia's economic loss rule is defined as follows: "In the absence of an accident, there can be no action in negligence to recover the loss of the economic value of a defective product, unless there is some personal injury or damage to other property." Order, p. 12 quoting *Long v. Jim Letts Oldsmobile, Inc.*, 135 Ga.App. 293, 295, 217 S.E.2d 602 (1975). Accordingly, there can be recovery for the loss of the economic value of a defective product if there is also some personal injury or damage to other property. Therefore, the Court's Order should reflect the rationale contained within its body that those claims for economic loss which also involve allegations of personal injury or damage to other property should not be dismissed, and Plaintiffs' request for clarification is granted.

### B. Accident Exception

In its Order, the Court made clear mention of the accident exception to Georgia's economic loss rule, noting that "an 'accident' should be defined as a sudden and calamitous event which, although it may only cause damage to the defective product itself, poses an unreasonable risk of injury to other persons or property." Order, p. 13 quoting *Vulcan Materials Co., Inc. v. Driltech, Inc.*, 251 Ga. 383, 306 S.E.2d 253, 256 (Ga.1983). In addition, while not directly quoted in the Court's Order, Georgia's accident exception states that in the event of such a sudden or calamitous event, "there is an accident exception to the general rule that an action in negligence does not lie absent personal injury or damage to property other than to the allegedly defective product." *Vulcan Materials Co., Inc.*, 306 S.E.2d at 257.

The Court then held that "whether … tort recovery is permissible requires a fact intensive inquiry regarding the type of damage sustained, and the cause of such damage. Accordingly, complete dismissal

of this claim is not appropriate at this juncture." Order, p. 13.

Plaintiffs seek a holding regarding whether the Georgia fires, which they claim caused personal injury and extensive damage to other property, meet the definition of an "accident" relating to the economic loss rule. Specifically, Plaintiffs request that the Court reconsider its Order and expressly determine whether it considers a SCD Switch fire to be a "sudden and calamitous event which, although it may only cause damage to the defective product itself, poses an unreasonable risk of injury to other persons or property."

The Court will defer from entertaining such a finding, noting that it has before it a motion to dismiss, rather than a motion for summary judgment. Accordingly, the Court does not have before it the details of the SCD Switch fire. In addition, the Court is concerned that the circumstances and extent of each SCD Switch fire may have been different, and is hesitant to make a ruling that would encompass all such fires. It is for this reason that the Court's original ruling specifically stated that "whether tort recovery is permissible requires a fact intensive inquiry regarding the type of damage sustained, and the cause of such damage." Plaintiffs' request for reconsideration on this matter is denied, and the Court maintains its original holding that "complete dismissal of this claim is not appropriate at this time." The Court further holds that, on a case by case basis, if the accident exception applies, then Plaintiffs' full claims, including claims for the value of the vehicle, should proceed forward.

## IV. Illinois Law

Plaintiffs further contend that as with Georgia law, discussed above, the Court failed to address the accident exception under Illinois law. Plaintiffs, in their response to Defendant's Motion to Dismiss, argued that the Court should apply the exception recognized in Illinois for a "sudden or dangerous occurrence." Dkt. 307 at 29.

Defendant's response asks the Court to deny Plaintiffs' motion for reconsideration, and grant Ford's partial motion to dismiss Illinois value-of-vehicle claims. Defendant argues that even where there is a sudden and calamitous event and personal injury, the economic loss doctrine bars recovery for damage to the product purchased. Defendant bases its argument primarily on the Illinois Supreme Court's ruling in *Trans States Airlines v. Pratt & Whitney Canada, Inc.*, 177 Ill.2d 21, 224 Ill.Dec. 484, 682 N.E.2d 45 (Il.1997). In that case, the Illinois Supreme Court, ruling on a certified question, held that even where there is a sudden and calamitous event and personal injury, the economic loss doctrine bars recovery for damage to the product purchased. The situation of *Trans States Airlines*, however, is distinguishable from the present matter, as that case involved a commercial transaction. Here, the Court is faced with a consumer transaction, and notes that the Illinois Supreme Court stated, "some jurisdictions make a distinction between commercial transactions and consumer transactions," and "the cause before us involves a purely commercial transaction." It went on to state, "although we are not now persuaded that the consumer/commercial transaction distinction makes any difference when the product damages only itself, we express no opinion in that regard." *Id.* at 53–54. Here, without further direction from the Illinois courts, this Court declines to limit Plaintiffs' claims to bar damage to the product purchased.

As with the Georgia claims, Plaintiffs seek a holding regarding whether the Illinois fires, which they claim caused personal injury and extensive damage to other

property, meet the definition of an "accident" relating to the economic loss rule. Illinois recognizes an accident exception to the economic loss rule "where the plaintiff sustains damage, i.e., personal injury or property damage, resulting from a sudden or dangerous occurrence." *Trans States Airlines v. Pratt and Whitney, Canada, Inc.*, 177 Ill.2d 21, 224 Ill.Dec. 484, 682 N.E.2d 45, 48 (Ill.1997).

 Unlike Georgia, where the accident exception requires a finding of a "sudden and calamitous event which, although it may only cause damage to the defective product itself, poses an unreasonable risk of injury to other persons or property," *Vulcan Materials Co., Inc. v. Driltech, Inc.*, 251 Ga. 383, 306 S.E.2d 253, 256 (Ga.1983) (emphasis added), the Illinois accident exception requires only property damage resulting from a sudden or dangerous occurrence, without the additional requirement that the accident itself pose an unreasonable risk of injury to other persons or property. Therefore, the Court need only determine whether the fires, as alleged, constitute a sudden or dangerous occurrence, and need not make the further determination of whether the fires posed an unreasonable risk of injury to other persons or property. Here, the Court finds that the fires, as alleged, constitute a sudden or dangerous occurrence, and Defendant's motion to dismiss the Illinois Plaintiffs' claims is denied.

## V. Order

Accordingly,

IT IS ORDERED that Plaintiffs' Motion for Clarification and Reconsideration is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that the Court's Opinion and Order dated September 29, 2009, is revised to include the above analysis and to state the following:

IT IS ORDERED that Defendant's Motion to Dismiss Count I is GRANTED.

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss Count II is GRANTED.

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss Count III is GRANTED.

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss the strict liability and negligence claims for the value of the vehicles containing the alleged fire causing SCD Switch is GRANTED in the following states: Florida, Michigan, Mississippi, New Jersey, North Carolina and Texas.

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss Plaintiffs' claims for the value of their vehicles in Georgia and Illinois is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss Plaintiffs' claims for the value of their vehicles in New Jersey and Oklahoma is DENIED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss claims not asserted and defendants not named in Plaintiffs' Fourth Amended Master Complaint is GRANTED.